926 A.2d 238

**Paul C. SPRENGER, et al.**

v.

**The PUBLIC SERVICE COMMISSION OF MARYLAND, et al.**

**No. 125 Sept. Term, 2006.**

Court of Appeals of Maryland.

June 21, 2007.

2

4

John J. Coyle, Jr. (Hidey, Coyle & Monteleone, Cumberland, MD), on brief, for Petitioners.

Miles H. Mitchell (Susan Stevens Miller of Maryland Public Service Com'n, Baltimore, Md), on brief; Jeffrey A. Lamken (David A. Super and Benjamin E. Kringer of Baker Botts, L.L.P., Washington, DC), on brief, for Respondents.

ARGUED BEFORE RAKER, CATHELL, HARRELL, GREENE, JOHN C. ELDRIDGE, (Retired specially assigned), ALAN M. WILNER, (Retired specially assigned) THEODORE G. BLOOM, (Retired specially assigned), JJ.

CATHELL, Judge.

This case arises from the approval by the Public Service Commission (the Commission) of a plan of Clipper Windpower ("Clipper"), to construct the Allegheny Heights Windpower Facility (the "Facility") in Garrett County, Maryland. Paul C. Sprenger and Rebecca Harvey,[1] petitioners, filed an action for declaratory relief in the Circuit Court for Garrett County, asking that court to rescind two Commission orders. The first order approved Clipper's plan to build the Facility, and the

---

1. In addition to Sprenger and Harvey, Russell W. Bounds, Eric Tribbey, and Paul Roderick were also plaintiffs before the Circuit Court for Garrett County and appellants before the Court of Special Appeals. Only Sprenger and Harvey sought review by this Court on the outcome of the action for declaratory relief filed in the Circuit Court for Garrett County.

second denied a request for rehearing on the approval of the Facility. The Circuit Court for Garrett County denied petitioners' action for declaratory relief, and they appealed to the Court of Special Appeals. In a reported opinion, that court affirmed the judgment of the Circuit Court. *Sprenger v. Public Service Comm'n,* 171 Md.App. 444, 910 A.2d 544 (2006). This Court granted certiorari to consider the following questions:

"I. IS AN INTERESTED PERSON WHO IS ADVERSELY IMPACTED BY AN ORDER OF THE PUBLIC SERVICE COMMISSION ENTITLED TO BRING AN ACTION FOR DECLARATORY RELIEF IF THE PUBLIC SERVICE COMMISSION FAILS TO PROVIDE REQUIRED NOTICE AND THE TIME TO FILE AN APPEAL FROM THE PUBLIC SERVICE COMMISSION ORDER HAS EXPIRED?

"II. DOES A CIRCUIT COURT HAVE JURISDICTION TO CONSIDER AND TRY THE SAME ISSUES RAISED BUT NOT TRIED IN ANOTHER CIRCUIT COURT IN AN ACTION DISMISSED AS UNTIMELY IF THE ISSUE OF TIMELINESS, NOT THE LACK OF NOTICE ISSUE RAISED IN BOTH CASES, IS PENDING IN AN APPELLATE COURT?"

*Sprenger v. Public Service Comm'n,* 396 Md. 524, 914 A.2d 768 (2007). We answer the first question in the negative and affirm the judgment of the Court of Special Appeals.[2]

## I. Facts

This case is the second of two cases, both challenging the process by which the Facility was approved, to reach this Court. As our decision in this case, the second one, is inexorably linked to the first case, we shall summarize the background of that case before reviewing the facts relevant to

---

**2.** It is axiomatic that we need not answer the second question presented because our holding, under the first question presented, that petitioners are not entitled to bring an action for declaratory relief, turns the second question into a hypothetical question. As a general rule, this Court does not answer hypothetical questions.

the present case. For clarity's sake we will refer to the first case as *"Clipper I "* [3] and, when necessary, we will refer to this case as *"Clipper II."*

## Clipper I

In *Clipper I,* filed earlier, we summarized the relevant facts as follows:

"On August 26, 2002, Clipper filed an application with the Commission seeking authorization to build a wind turbine facility for the purpose of generating electricity. As required, Clipper notified the public of its application to build the facility, and the date, time, and location of a scheduled pre-hearing conference by publishing a notice in both *The Republican* and The *Cumberland Times–News,* generally circulated newspapers in Garrett County, on the successive weeks of September 26, 2002, September 30, 2002, October 3, 2002, and October 6, 2002.[4]

"The wind turbine facility was to be composed of up to 67 individual turbines. Each turbine would consist of a free-standing tower approximately 262 feet in height. A rotor, having a diameter not in excess of 262 feet (80m) (39m blades), would be attached to the tower. The maximum combined height would be approximately '394 ft (120 m) with one blade in the vertical position.' Clipper's executive summary of its proposal for the facility implied that some, but not all, of the turbines would be of that size and stated that all 67 turbines may not need to be built depending upon 'factors . . . not identified prior to [the] start of construction.' In addition to the tower and the blade, each turbine would consist of a foundation anchoring it to the ground and a transformer that would collect the power from the turbines and transfer it to a substation through an 'underground electrical collection system.' All-weather gravel ser-

---

**3.** *Clipper v. Sprenger,* 399 Md. 539, 924 A.2d 1160 (2007).

**4.** The parties do not dispute that the notices appeared in either of the newspapers nor do they dispute that both of the newspapers are papers of general circulation in Garrett County.

vice roads would be built from existing hardtop roads and the cables associated with the electrical collection system were to be buried alongside such service roads. The total project area would cover approximately 10.8 miles and would be constructed on Backbone Mountain extending from 'Wild Turkey Rock at an elevation of 3,228 ft (984 m) above sea level southwestward to Allegheny Heights at 3,200 ft (975 m).' Although three other sites were surveyed, Allegheny Heights was selected 'because of wind resource potential and favorable site characteristics (primarily contiguous, well-exposed areas and proximity to three transmission lines).' [5]

"An adjudicatory hearing [6] regarding Clipper's proposal, at which attendance was high, 'standing room only,' was held. Clipper, the Department of Natural Resources's Power Plant Research Program, the staff of the Commission, and the Office of People's Counsel were the named parties to the proceeding. Pursuant to PUC § 3–106, four individual members of the public intervened and were granted party status.[7] Among those in attendance were respondents Eric Tribbey and Russell Bounds.... Although both Tribbey and Bounds submitted citizen comment letters following the conclusion of the hearing, neither they, nor Friends,[8] sought to intervene.

---

5. "It appears that access to the project area via 'improved hardtop roads' was also a factor in choosing this particular site over others." *Clipper I*, 399 Md. at 545 n. 7, 924 A.2d at 1163 n. 7.

6. The hearing was conducted on January 7–8, 2003.

7. "They were Chandler S. Robbins, Ajax Eastman, D. Daniel Boone, and Jon E. Boone. None of these individuals is a party to the present action." *Clipper I,* 399 Md. at 545 n. 8, 924 A.2d at 1163 n. 8.

8. According to a letter Tribbey wrote to the Commission on behalf of the "Friends of Backbone Mountain" ("Friends"), that organization is "a growing group of over 100 Garrett County citizens' " seeking to obtain " 'a moratorium on construction of wind projects in Garrett County until enforceable siting criteria can be enforced.' " *Clipper I*, 399 Md. at 546 n. 9, 924 A.2d at 1164 n. 9. Apparently, Friends was created after the Commission's initial order allowing the Facility to be built.

"The hearing examiner issued a proposed order that contained and recommended settlement conditions to which all of the parties had agreed, which the Commission subsequently adopted. It issued a final order (Order No. 78354) approving Clipper's plan.

"Tribbey, then, writing on behalf of Friends, submitted a letter to the Commission requesting a rehearing. The Commission, by Order No. 78617, denied the request, explaining:

'This matter comes before the Public Service Commission ("Commission") as a result of a series of filings made by entities that did not appear as parties in the above-captioned proceeding. On April 24, 2003, the Friends of Backbone Mountain ("Friends") filed a *pro se* formal request for rehearing in this case. On April 25, 2003, Citizens for Responsible Wind Power ("Citizens") also filed a *pro se* formal request for rehearing in this case. A third *pro se* formal request for rehearing in this matter was filed on April 28, 2003, by The Garrett County Historical Society ("Garrett Historical").... Friends made an additional filing, by Counsel, on June 27, 2003. This June 27th filing includes two documents: (1) an Application to Intervene, and (2) a Supplement to Request for Rehearing and Application to Reopen for Further Evidence.... On August 5, 2003, Counsel for Paul C. Sprenger filed an Application to Intervene and a Motion for Reconsideration and for Modification of the Order of the Public Service Commission ("Sprenger Motion"). This August 5th filing includes four exhibits ("Sprenger Exhibits A, B, C, and D"). None of the actual parties to the case have raised any objection to the Commission's Order No. 78354, issued on March 26, 2003.

'The Commission denies all four requests. Public Utility Companies ("PUC") Article § 3–114(c)(1) restricts the right to apply for rehearing to parties: "A *party in interest* may apply to the Commission for rehearing within 30 days after service of a final order on the party." [Emphasis added.] Since none of the four entities re-

questing rehearing were parties to the proceeding, none qualify to request rehearing. Additionally, the filing made on behalf of Friends on June 27, 2003, is not a filing provided for either under PUC § 3–114 or Code of Maryland Regulations ("COMAR") § 20.07.02.08,[9] both of which contemplate a single, comprehensive rehearing application by a party. Friends' June 27th filing is also well beyond the thirty-day period during which parties may request rehearing. Sprenger's filings are still further beyond the thirty-day period during which parties may request rehearing.

'Clipper complied with all of the procedural elements of the Certificate of Public Convenience and Necessity ("CPCN") process, including the provisions of COMAR § 20.79.01.03, and also complied with the Hearing Examiner's direction to advertise the pre-hearing conference and the public hearings in local Garrett County newspapers. The four entities requesting rehearing had sufficient notice and opportunity to intervene as parties; since

---

9. "COMAR § 20.07.02.08 states:
'.08 Rehearings.
'A. Applications for reopening a cause after final submission, or for rehearing after final order, shall be made by petition in writing, stating specifically the grounds upon which the application is based.
'B. If the application is to reopen the cause for further evidence, the nature and purpose of the evidence shall be stated, and may not be merely cumulative.
'C. If the application is for a rehearing, the petition shall specify the findings of fact or of law claimed to be erroneous, together with a brief statement of the ground of the alleged error.
'D. A petition seeking to reverse or modify a decision, order, or requirement of the Commission shall:
 '(1) Fully set forth the facts, circumstances, and consequences relied upon; and
 '(2) Allege:
 '(a) The facts and circumstances which have arisen after the hearing or order which justify the reversal or modification; or
 '(b) The consequences resulting from compliance with the decision, order, or requirement which justify or entitle the applicant to the reversal or modification.' "
Clipper I, 399 Md. at 547–48 n. 10, 924 A.2d at 1165 n. 10.

they did not, they do not have standing to request rehearing. . . .

'. . . as already stated, Clipper properly advertised the pre-hearing conference and the public hearings in local Garrett County newspapers, thus providing sufficient notice to enable prompt and timely intervention. This is not a question of whether Friends could have intervened "sooner in the process," but rather an issue of whether Friends attempted to intervene *during* the process at all. The Commission finds that the attempted intervention is outside the process, and cannot be granted since the proceeding closed prior to the attempted intervention.'

Order No. 78617 (internal footnotes omitted). Thus, the Commission concluded that Friends was not a 'party in interest' under PUC § 3–114 because it had not properly intervened under PUC § 3–106. The Commission also determined that it already had fully considered the issues presented for rehearing in the original proceedings and it was not necessary to readdress them or to address them further.

"Thereafter, . . . Tribbey, on his own behalf, and not on behalf of Friends, filed a petition for judicial review of the Commission's Order No. 78617, and, on the same day, a separate petition for judicial review of the Commission's Order was filed by the respondent[s] Sprenger, Bounds, and Gnegy.[10] The actions having been consolidated, the petitioners each filed a motion to dismiss the petitions as untimely. Before the Circuit Court, the respondents did not contend that they were "parties" to the proceeding, just that they were 'persons in interest.'[11] Tribbey argued, in

---

**10.** Both of the petitions for judicial review in *Clipper I* were filed on September 3, 2003, in the Circuit Court for Baltimore City.

**11.** "Specifically, the court asked respondents' counsel, 'You're not claiming that either of the [respondents] here was a party to the proceedings?' To which respondents' counsel replied, 'No, I'm not.'

addition, that although Friends was not a 'party in interest,' its application for rehearing tolled the deadline for filing a petition for judicial review.

"The Circuit Court [for Baltimore City] dismissed both actions [on March 31, 2004], ruling that none of the respondents had filed a timely request for rehearing and that their petitions for judicial review were similarly untimely.... [According to the Circuit Court for Baltimore City, even though] Friends' request for rehearing may have been timely filed, its request was invalid because Friends was not a 'party in interest' and, thus, was not entitled to a rehearing under PUC § 3–114.

"Thereafter, the respondents appealed to the Court of Special Appeals, which, in an unreported opinion, [filed July 27, 2005,] reversed the judgment of the Circuit Court [for Baltimore City]. [The intermediate appellate court found] that the judicial review action should not have been dismissed as untimely.... [12] The court concluded that 'it would be exalting form over substance to hypothesize that Mr. Tribbey made the request for a rehearing "solely" as a representative of the Friends of Backbone Mountain.' On this premise, the court held that, 'as a result of the timely request for rehearing filed by Mr. Tribbey, all of the appellants had 30 days from August 8, 2003 to file their actions for judicial review of the Commission's March 26, 2003 order.' "

*Clipper I*, 399 Md. at 544–51, 924 A.2d at 1163–66 (some footnotes omitted).

---

Respondents claimed that they were 'persons in interest.' " *Clipper I*, 399 Md. at 549 n. 12, 924 A.2d at 1166 n. 12.

12. "The court [reasoned] that Mr. Sprenger was not a 'party in interest' to the proceeding because he was not a 'party' to the proceeding. Moreover, none of the respondents would be a 'party in interest' 'because none was personally and specifically affected in a way different from the public generally.' " *Clipper I*, 399 Md. at 551 n. 13, 924 A.2d at 1167 n. 13. The latter criteria was determined in *Clipper I* to be the "wrong standard" to apply to review of Commission decisions in this regard. *Id.* at 562 n. 20, 924 A.2d at 1173 n. 20.

After granting both the Commission's and Clipper's petitions for certiorari, we consolidated them and reviewed the following question in *Clipper I:*

" 'Whether PUC § 3–114(c) limits the right to request rehearing solely to "a party in interest" that has properly intervened as such in the Commission's proceedings, and is thus distinguishable from PUC § 3–202(a) which provides a right to judicial review to "a party or person in interest . . . dissatisfied by a final decision or order of the Commission . . ."?' "

*Clipper I,* 399 Md. at 542–44, 924 A.2d at 1162 (footnote omitted). Answering the question in the affirmative, we determined that the petition for judicial review was not timely filed, stating:

"The facts of the instant case show that neither Friends nor Tribbey timely filed an application to intervene. Friends filed to intervene on June 27, 2003, after it had attempted to apply for rehearing and well after it would have been timely to intervene (i.e., prior to the close of proceedings). Failing timely to intervene, Friends was not a party, and, therefore, not a 'party in interest,' when it filed for rehearing on April 24, 2003. Thus, the Commission's denial of Friends' application for rehearing was appropriate. Similarly, Tribbey *never* filed to intervene in his own right and, thus, also never became a party or 'party in interest.' [13] As a result, even if we were to consider Tribbey's representation of Friends to satisfy somehow his own personal filing for rehearing, he still would not have properly filed, as he never intervened to become a party.

. . .

---

**13.** "The fact that Tribbey was an adjoining landowner and was present at the adjudicatory hearing in January of 2003, does not, in and of itself, make him a 'party.' In order to have become a 'party' Tribbey would have had to apply to intervene, pursuant to PUC § 3–106. It is evident that he did not."
*Clipper I,* 399 Md. at 556 n. 17, 924 A.2d at 1170 n. 17.

"Tribbey did not timely or properly apply for rehearing because he was not himself a 'party' or 'party in interest.' Therefore, the Court of Special Appeals' erred in its determination as to the respondents' petitions for judicial review. The respondents did not have '30 days from August 8, 2003 to file their actions for judicial review of the Commission's March 26, 2003 order.' [14] Rather, they had 30 days from March 26, 2003.

"None of the respondents [15] filed a petition for judicial review within that time period and, hence, their petitions for judicial review, not being timely, were properly denied."

*Clipper I*, 399 Md. at 561–63, 924 A.2d at 1173–74.

## *Clipper II* [16]

On or about April 25, 2005, Paul C. Sprenger, Russell W. Bounds, Eric Tribbey, Paul Roderick, and Rebecca M. Harvey filed a petition for declaratory relief in the Circuit Court for

---

14. "The respondents also argue that Friends' application for rehearing stayed the time for filing a petition for judicial review for all entities until the Commission had made its ruling on August 8, 2003. Maryland Code (1998), § 3–204(c) of the Public Utility Companies Article provides: 'If a rehearing by the Commission is applied for, a proceeding for judicial review may be filed after service of the decision of the Commission that denies the rehearing.' This may be true when a *proper* application (by an entity who has sought and has been permitted to intervene as a party) for rehearing is timely filed. In the instant case, however, as discussed *supra*, there was no timely application by a 'party' or 'party in interest' for rehearing. Thus, the time for filing a petition for judicial review was not stayed."
*Clipper I*, 399 Md. at 562–64, 924 A.2d at 1173–74.

15. "It is also clearly evident that Friends *never* filed a petition for judicial review." *Clipper I*, 399 Md. at 564 n. 26, 924 A.2d at 1174 n. 26.

16. Throughout this opinion we are required to discuss the Public Utility Companies Article and the Courts and Judicial Proceedings Article of the Maryland Code. We will abbreviate them as "PUC" and "CJP," respectively, when possible. In the interests of clarity and ease of reading, we may sometimes use the entire citation or simply cite to the relevant section of the Code in context.

Garrett County.[17] The action was brought pursuant to Maryland Code (1998), § 3–201 of the Public Utility Companies Article,[18] or, alternatively, under Maryland Code (1984, 2004 Repl. Vol.), § 10–125 of the State Government Article,[19] or

---

**17.** The present case began after *Clipper I* had been appealed to the Court of Special Appeals. It may be helpful to review a brief chronology of the combined proceedings thus far. On September 3, 2003, the *Clipper I* petitions for judicial review were filed in the Circuit Court for Baltimore City; on March 31, 2004, the Circuit Court for Baltimore City dismissed the consolidated petitions for judicial review and, shortly thereafter, an appeal was noted in *Clipper I* to the Court of Special Appeals. The Court of Special Appeals did not file its opinion in *Clipper I* until July 27, 2005—three months *after* the present action for declaratory relief was filed.

**18.** At the time of the initial hearing, Maryland Code (1998), § 3–201 of the Public Utility Companies Article, in relevant part, provided:
 "(a) *In general.*—(1) The validity of a regulation of the Commission may be determined on a petition for declaratory judgment whenever it appears that the regulation, or its application, actually or potentially interferes with or impairs the legal rights or privileges of the petitioner."
Maryland Code (1998, 2006 Cumm. Supp.), § 3–201 of the Public Utility Companies Article, effective June 1, 2004, provides:
 "(a) *In general.*—Notwithstanding § 10–120 of the State Government Article, the validity of a regulation of the Commission shall be challenged in accordance with § 10–125 of the State Government Article."
Petitioners did not make clear under which version of PUC § 3–201(a) they were seeking declaratory relief. It is, however, irrelevant for two reasons. First, under either version, the analysis would have been the same. If petitioners were seeking relief under the pre-June 2004, version of PUC § 3–201(a), that section would have controlled and relief could not have been sought under § 10–125 of the State Government Article. If, on the other hand, petitioners were seeking relief under the post-June 2004, version of PUC § 3–201(a), that section is still controlling, but requires the action to be brought under § 10–125 of the State Government Article, which is substantially the same as the pre-June 2004 PUC § 3–201(a). The second reason the distinction is irrelevant is that, in the present case, we do not reach the merits of petitioners' arguments because we are only concerned with whether the trial judge was correct in dismissing the action for declaratory relief.

**19.** Maryland Code (1984, 2004 Repl. Vol.), § 10–125 of the State Government Article reads in relevant part:
 "(a) *Petition authorized.*—(1) A person may file a petition for a declaratory judgment on the validity of any regulation, whether or not the person has asked the unit to consider the validity of the regulation."

Maryland Code (1973, 2006 Repl. Vol.), § 3–401 *et seq.* of the Courts and Judicial Proceedings Article.[20] Before the trial court, petitioners asserted that they were interested parties essentially because the construction of the Facility would adversely affect their property values. They also asserted that Clipper was seeking to expand an existing right of way without consent and use it for impermissible purposes.

Petitioners, at the trial level, mounted a two pronged attack against the manner in which the Commission and Clipper provided notice to them regarding the hearing related to Clipper's application to build the Facility. The first prong alleged a constitutional violation (which we will construe, more specifically, as an alleged due process violation). According to petitioners, Maryland Code (1998), §§ 7–207(c)(1)[21] and 7–208(d)[22] of the Public Utility Companies Article, required that

---

20. Sections 3–401–415 of the Courts and Judicial Proceedings Article, comprise the Declaratory Judgment Act. The relevant portions will be discussed *infra.*

21. Maryland Code (1998), § 7–207(c)(1) of the Public Utility Companies Article, provides:
 "(c) *Notice to interested persons.*—(1) On receipt of an application for a certificate of public convenience and necessity under this section, the Commission shall provide notice to the Office of Planning and to all other interested persons."

22. Without accepting or rejecting their argument, at this juncture, it appears that petitioners erroneously cite to PUC § 7–208 *(d)(2)(i)* as standing for the proposition that interested persons are to receive notice. *See* p. 5, of petitioners' brief and p. 4 of the original petition for declaratory relief. Section 7–208 *(d)(2)(i)* does not appear to be at all relevant to petitioners' argument. We think petitioners intended to cite to § 7–208(d)(1)(i) both from reading § 7–208(d) in its entirety and from how petitioners' reproduced just § 7–208(d)(1)(i) (as opposed to 7–208(d)(2)(i)) in the appendix to their brief. *See* App. at 5.
 We have transcribed § 7–208(d) in its entirety, but we will only discuss § 7–208(d)(1)(i), *infra,* because we deem the remainder of that subsection irrelevant under the circumstances:
 "(d) *Notice and public hearing.—(1) On receipt of an application under this section, together with any additional information requested under subsection (c)(2) of this section, the Commission shall provide notice to:*
 *(i) all interested persons;*
 (ii) the Department of Agriculture;

they be given personal notice of the hearing because they owned property contiguous to or within one half mile of the proposed facility. The second prong, closely related to the first, alleged that the Commission violated the statutory requirements of those same sections by not giving the "required" personal notice.

On or about May 26, 2005, both the Commission and Clipper filed motions to dismiss the petition for declaratory relief. Respondents argued that the petitioners' challenge under PUC § 3–201 and § 10–125 of the State Government Article should fail because they did not challenge the validity of a regulation, they lacked standing, and that the petition was untimely. The motions also asserted that the petition for declaratory relief was barred by res judicata because it "merely re-labels the Petition for Judicial Review already litigated in the Circuit Court for Baltimore City...."

At oral argument before the Honorable James L. Sherbin of the Circuit Court for Garrett County on August 16, 2005, the Commission summarized these arguments. Judge Sherbin, referring to the similarities between *Clipper I* and *Clipper II* and foreshadowing his ultimate judgment said: "I haven't heard anything ... from [counsel for petitioners], but I'm

---

(iii) the Department of Business and Economic Development;

(iv) the Department of the Environment;

(v) the Department of Natural Resources;

(vi) the Department of Transportation;

(vii) the Office of Planning.

*(2) The Commission shall hold a public hearing on the application as required by § 7–207 of this subtitle, after;*

*(i) the receipt of any additional information requested under subsection (c)(2) of this section that the Commission considers necessary;* and

(ii) any publication of notice the Commission considers to be proper.

(3)(i) At the public hearing, the Commission shall ensure presentation of the information and recommendations of the State units specified in paragraph (1) of this subsection and shall allow the official representative of each unit to sit during hearing of all parties.

(ii) Based on the evidence relating to the unit's areas of concern, the Commission shall allow each unit 15 days after the conclusion of the hearing to modify or affirm the units initial recommendations."

(Bolding added.) (Emphasis added.)

beginning to wonder now why we are in this court.... So make a note of that, [counsel for petitioners.] ..."

In response to these arguments, and in response to Judge Sherbin's concern, counsel for petitioners attempted to explain why an action for declaratory relief was being brought in the Circuit Court for Garrett County:

"[M]y clients own farms and residential properties very near to the project, that will be impacted by visual and by the noise impact, and they are concerned about the impact, and they think that they should have received notice in advance of what was going on and what its potential impact would be, and that notice wasn't given. I don't want to argue the merits of what we're claiming, but essentially, our position is that the Public Utilities Commission statute, when it says that a copy of the application go[es] to interested persons, that these people within very near proximity to this project are interested persons, and they should have been given notice when the application was filed.[23]

"Secondly, constitutionally, our position is that this project will have an impact on their property, and since it's going to have an impact on their property, they're at least entitled to notice and a hearing to present their position on their side of it. We have been searching for a remedy, but every remedy we try, the Public Service Commission and Clipper says, that is not the right remedy.

"Essentially, our position is that the proceedings that [were] conducted, that resulted in the certificate, [were] flawed because they failed to comply with the statute on notice and the Constitutional requirements on notice, as to our client. Well, if our clients aren't given notice of the proceedings, it's kind of hard to file an appeal from the proceedings, because by the time all that water's over the dam, then you find out what's going on, it's too late to file the appeal.

---

**23.** This project encompassed 10.8 miles. Presumably, there may have been hundreds, or even thousands, of persons in close proximity to a project of this size.

"Now, in this case, one of the participants was Eric Tribbey, and on behalf of himself and Backbone—Friends of Backbone Mountain, he filed a request for rehearing. The request for rehearing stays the time for the appeal, and during that time, we filed additional information with the Commission to try to get—try to convince them that they should have given notice and that they should allow us to participate in the proceedings, and those motions were denied, and the request for rehearing was denied, and that resulted in our appeal of the case to the Circuit Court for Baltimore City.

*"The issues raised in the Circuit Court for Baltimore City are almost exactly the same issues that I raised in Garret County. I mean ... there's no secret there.*

. . .

"The law in Maryland says that you cannot have the same issues pending in two different Circuit Courts at the same time. Our issues aren't pending in the Circuit Court for Baltimore City anymore. They've been dismissed. If there is no petition for cert[iorari] [ ] and the case is remanded back to the Circuit Court for Baltimore City, then there would be similar issues pending in both jurisdictions and the proper remedy at that point is probably to combine the cases. But right now, the issues are not pending in Baltimore City." (Emphasis added.)

Additionally, Counsel for petitioners argued that *Clipper I* was no longer before the Circuit Court for Baltimore City, therefore, filing a petition for declaratory relief was still a viable option because Clipper and the Commission had not, at that time, decided whether to petition this Court to review the judgment of the Court of Special Appeals in *Clipper I*. Thus, according to petitioners in the present case, the declaratory judgment action was necessary to prevent Clipper from beginning construction of the Facility. Judge Sherbin clearly understood the dilemma posed by allowing the petitioners' action for declaratory relief to continue, as demonstrated by the following colloquy:

THE COURT: "Wouldn't that be folly for someone to construct these very expensive items when the case is [potentially] on appeal to the Court of Appeals of the State, and wouldn't it be equally foolish for a Circuit Court in Garrett County to be deciding issues which are [potentially] in front of the Court of Appeals of this State? And maybe we'd get it identically correct, and maybe we wouldn't, and if we didn't, guess who would take precedence[?]

[Counsel for petitioners]: "I think you would, Your Honor.

THE COURT: "No, I don't think I would prevail with the Court of Appeals of this State."

On August 26, 2005, Judge Sherbin issued an opinion and order dismissing the petition for declaratory relief. The trial court based the dismissal on the grounds that the petition was, in essence, an untimely petition for judicial review of the Commission's March 26, 2003, order, *see Clipper I.* The trial court also opined that it was not in the interests of judicial economy for the Circuit Court for Garrett County to consider the same issues that still had the potential of being litigated in *Clipper I* if Clipper or the Commission chose to file a petition for a writ of certiorari to this Court (which they ultimately did).

Petitioners appealed the decision of the Circuit Court for Garrett County to the Court of Special Appeals. *Sprenger,* 171 Md.App. 444, 910 A.2d 544 (2006). The Court of Special Appeals determined that the Circuit Court for Garrett County did not err in finding that the petition for declaratory relief was the functional equivalent of a belated appeal, stating: "Declaratory relief under the Act does not afford a failsafe to parties who fail to satisfy the procedural requirements of the statutory remedy. Failure to timely exercise their statutory remedy does not entitle appellants to now obtain declaratory relief under the Act." *Id.* at 454–55, 910 A.2d at 550. That court also determined that the trial court was correct in concluding that petitioners' claim was barred because the

same issue was pending before another Circuit Court in Maryland:

"Assuming [petitioners'] petition for declaratory relief is proper, and assuming that the Court of Appeals remands [*Clipper I*] [ ] to the circuit court as timely filed, two cases involving identical issues would proceed on the merits. The Circuit Court for Garrett County aptly stated: 'What concerns me is the integrity of the process, in that we have, seemingly, the same complaint in two different areas ... and we can't have two litigations, covering the same items, going on at the same time.' . . ."

*Id.* at 458, 910 A.2d at 552–53.

## II. Standard of Review

 Maryland Code (1973, 2006 Repl. Vol.), § 3–409(a) of the Courts and Judicial Proceedings Article provides that a court "*may* grant a declaratory judgment or decree in a civil case. . . ." (Emphasis added). It follows that "declaratory judgment generally is a discretionary type of relief." *Converge Services Group v. Curran,* 383 Md. 462, 477, 860 A.2d 871, 879 (2004). If the Circuit Court abuses its discretion in refusing to grant an order for declaratory relief, this Court will reverse the lower court. *Id.* at 477, 860 A.2d at 879 (citing *A.S. Abell Co. v. Sweeney,* 274 Md. 715, 720, 337 A.2d 77, 81 (1975) (concluding that " 'some discretion is left to the courts' in granting declaratory relief ") (quoting *Grimm v. County Comm'rs of Washington County,* 252 Md. 626, 632, 250 A.2d 866, 869 (1969))).

 On the one hand, we have admonished trial courts to grant declaratory judgment when it has been petitioned for and the circumstances of the controversy warrant it. *Converge Services Group,* 383 Md. at 477, 860 A.2d at 880; *Salamon v. Progressive Classic Ins. Co.,* 379 Md. 301, 308 n. 7, 841 A.2d 858, 862 n. 7 (2004). On the other hand, "is the logical converse, that is, when a declaratory judgment action is brought and the controversy is not appropriate for resolution by declaratory judgment, the trial court is neither compelled,

nor expected, to enter a declaratory judgment." *Converge Services Group*, 383 Md. at 477, 860 A.2d at 880 (citing *Popham v. State Farm Mut. Ins. Co.*, 333 Md. 136, 140–41 n. 2, 634 A.2d 28, 30 n. 2 (1993)). Thus, we generally review a trial court's decision to grant or deny declaratory judgment under an abuse of discretion standard.

In the present case, the trial court did not reach the merits of the petition for declaratory judgment because it held, as a matter of law, that the petition could not be maintained and then, in the first instance, granted respondents' motions to dismiss. In reviewing a motion to dismiss, "we accept all well-pled facts in the complaint, and reasonable inferences drawn from them, in a light most favorable to the non-moving party," *Converge Services Group*, 383 Md. at 475, 860 A.2d at 878 (citing *Porterfield v. Mascari II, Inc.*, 374 Md. 402, 414, 823 A.2d 590, 597 (2003)), because the object of a motion to dismiss is to argue that relief could not be granted on the facts alleged as a matter of law. *Converge Services Group*, 383 Md. at 475, 860 A.2d at 878 (citing Paul V. Niemeyer & Linda M. Schuett, *Maryland Rules Commentary*, 206 (3d ed. 2003)). We will only find that dismissal was proper " 'if the alleged facts and permissible inferences, so viewed, would, if proven, nonetheless fail to afford relief to the plaintiff.' " *Pendleton v. State*, 398 Md. 447, 921 A.2d 196 (2007) (quoting *Ricketts v. Ricketts*, 393 Md. 479, 491–92, 903 A.2d 857, 864–65 (2006)). When reviewing the grant of a motion to dismiss, an appellate court is concerned with determining whether the trial court was legally correct. *Pendleton v. State*, 398 Md. 447, 921 A.2d 196 (2007) (citing *Benson v. State*, 389 Md. 615, 626, 887 A.2d 525, 531 (2005)).

### III. Discussion

Petitioners assert that declaratory relief is appropriate under the circumstances of this case because they were "entitled to notice, denied notice and, as a result, denied judicial review." Essentially, petitioners argue that the Commission's alleged failure to provide them individually with sufficient notice of the January 7–8, 2003, administrative hearing denied

them the ability to participate in those proceedings. They further contend that their lack of knowledge of the proceedings and the Commission's resulting order denied them the ability to seek judicial review under Maryland Code (1998), § 3–202 of the Public Utility Companies Article [24] which is the legislatively provided means for judicial review of the Commission's orders. Thus, according to petitioners, they should be permitted to seek declaratory relief under the Declaratory Judgment Act, Maryland Code (1973, 2006 Repl. Vol.), §§ 3–401–3–415 of the Courts and Judicial Proceedings Article.

Clipper and the Commission argue in the instant case that the relevant portions of the Public Utility Companies Article do not require personal notice and that publication is satisfactory because it "is the long-established means of providing notice of development projects to interested individuals where there will be no physical entry onto or invasion of their property." Additionally, respondents assert that, although PUC §§ 7–207(c) and 7–208(d) require notice to parties in interest, there is no requirement in those sections that individual notice is to be given. Respondents also argue that when

---

24. Maryland Code (1998), § 3–202 of the Public Utility Companies Article provides in relevant part:

"(a) *In general.*—Except for the staff of the Commission, a party or person in interest, including the People's Counsel, that is dissatisfied by a final decision or order of the Commission may seek judicial review of the decision or order as provided in this subtitle...."
Although § 3–202 does not provide a specific time period within which a person in interest must seek judicial review, Maryland Rule 7–203 provides:

. "(a) **Generally.** Except as otherwise provided in this Rule or by statute, a petition for judicial review shall be filed within 30 days after the latest of:
(1) the date of the order or action of which review is sought;
(2) the date the administrative agency sent notice of the order or action to the petitioner, if notice was required by law to be sent to the petitioner; or
(3) the date the petitioner received notice of the agency's order or action, if notice was required by law to be received by the petitioner.
(b) **Petition by other party.** If one party files a timely petition, any other person may file a petition within ten days after the date the agency mailed notice of the filing of the first petition, or within the period set forth in section (a), whichever is later."

the General Assembly provides a statutory means for petitioners' grievances to be addressed, as it did in PUC § 3–202, the Declaratory Judgment Act may not be invoked because the "legislature has provided a more specialized procedure for seeking judicial review." They assert that the onus was on petitioners to avail themselves of the process provided for in PUC § 3–202 and the fact that they failed to do so, regardless of the reason, does not permit them to seek relief under the Declaratory Judgment Act. Respondents now contend that even if petitioners are entitled to bring an action under the Declaratory Judgment Act, they cannot do so because the claims presented in this case duplicate those presented by the complaining parties in *Clipper I.*

### A. Declaratory Relief[25] and Exhaustion of Administrative Remedies

The purpose of the Declaratory Judgment Act is to "settle and afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations." Maryland Code (1973, 2006 Repl. Vol.), § 3–402 of the Courts and Judicial Proceedings Article. The Act "is remedial" in nature and "shall be liberally construed and administered." CJP § 3–402. Our cases have repeatedly recognized the broad remedial purpose of the Declaratory Judgment Act. *See Maryland–Nat'l Capital Park & Planning Com'n v. Washington Nat'l Arena,* 282 Md. 588, 595, 386 A.2d 1216, 1222 (1978) (recognizing "the strong legislative policy favoring the liberal use and interpretation of the Declaratory Judgments Act . . ."); *Himes v. Day,* 254 Md. 197, 206, 254 A.2d 181, 186 (1969)

---

**25.** Maryland Code (1973, 2006 Repl. Vol.), § 3–406 of the Courts and Judicial Proceedings Article states:

"Any person interested under a deed, will, trust, land patent, written contract, or other writing constituting a contract, or whose rights, status, or other legal relations are affected by a statute, municipal ordinance, administrative rule or regulation, contract, or franchise, may have determined any question of construction or validity arising under the instrument, statute, ordinance, administrative rule or regulation, land patent, contract, or franchise and obtain a declaration of rights, status, or other legal relations under it."

(stating that " 'the object of the declaratory judgment act is to supplement and enlarge procedural relief in a field not wholly or adequately occupied by subsisting remedies of law and equity.' ") (quoting *Schultz v. Kaplan,* 189 Md. 402, 56 A.2d 17 (1947)).

Even though the Declaratory Judgment Act is to be liberally construed, there are certain restrictions in its application. Section 3–409(b) of the Declaratory Judgment Act states that: *"If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."* (Bolding added) (Emphasis added). This Court has echoed that requirement on several occasions: "It is well settled in Maryland that when there is a special statutory remedy for a specific type of case, and that remedy is intended to be exclusive or primary, a party 'may not circumvent those [special statutory] proceedings by a declaratory judgment ... action....' " *Utilities, Inc. v. Washington Suburban Sanitary Comm'n,* 362 Md. 37, 45, 763 A.2d 129, 133 (2000) (quoting *Montgomery County v. Broadcast Equities,* 360 Md. 438, 456–61, 758 A.2d 995, 1005–08 (2000)); *see Maryland Reclamation Assoc's, Inc. v. Harford County,* 382 Md. 348, 362, 855 A.2d 351, 359 (2004) (recognizing that when a statute provides for administrative remedies, those remedies must be pursued instead of pursuing declaratory relief). Thus, declaratory relief "is barred by some statutory and judicially-crafted restrictions in limited circumstances." *Converge Services Group,* 383 Md. at 478, 860 A.2d at 880.

It is the general rule in this State that when an administrative remedy is provided by the General Assembly, administrative process must be exhausted before the aggrieved party may resort to the courts for other relief. *Prince George's County v. Ray's Used Cars,* 398 Md. 632, 642, 922 A.2d 495, 501 (2007); *Zappone v. Liberty Life Ins. Co.,* 349 Md. 45, 63, 706 A.2d 1060, 1069 (1998) (stating that there is a "presumption that the administrative remedy is intended to be primary, and [ ] a claimant cannot maintain the alternative

judicial action without first invoking and exhausting the administrative remedy."). *See e.g., Maryland Reclamation Assoc's,* 382 Md. at 362, 855 A.2d at 359 ("[W]hen administrative remedies exist in zoning cases, they must be exhausted before other actions, including requests for declaratory judgments, mandamus, and injunctive relief, may be brought." (citing *Josephson v. City of Annapolis,* 353 Md. 667, 674–78, 728 A.2d 690, 693–95 (1998))); *Fosler v. Panoramic Design, Ltd.,* 376 Md. 118, 128, 829 A.2d 271, 277 (2003) ("[T]he presumption that a statutory administrative remedy is primary is reflected in the Declaratory Judgment Act.").[26]

By enacting the Public Utility Companies Article, the General Assembly provided a special form of remedy for specific types of cases such as the present one. The fact that petitioners failed to avail themselves of that legislatively provided remedy does not enable them to deny the existence of the

---

**26.** We have recognized several exceptions to the general rule that bars declaratory relief when a statute requires administrative remedies to be pursued and exhausted. *Maryland Reclamation Assoc's,* 382 Md. at 362 n. 5, 855 A.2d at 359 n. 5. When the challenge to the facial validity of a statute is made, we will often, though not always, make an exception to the exhaustion requirement. *Comm'n on Human Relations v. Mass Transit Admin.,* 294 Md. 225, 232, 449 A.2d 385, 388 (1982). We have also determined that when the General Assembly expresses an intent that the administrative remedy need not be invoked or exhausted, the exhaustion requirement may not apply. *Id.* at 232 n. 4, 449 A.2d at 388 n. 4 (citing *White v. Prince George's Co.,* 282 Md. 641, 649, 387 A.2d 260, 265 (1978); *Washington Nat'l Arena,* 282 Md. at 595–96, 386 A.2d at 1222–23). Furthermore, there may not be a need to exhaust administrative remedies when an agency is without jurisdiction. *Comm'n on Human Relations v. Freedom Express/Domegold, Inc.,* 375 Md. 2, 19, 825 A.2d 354, 364 (2003); *SEFAC Lift & Equipment Corp. v. Mass Transit Admin.,* 367 Md. 374, 382, 788 A.2d 192, 197 (2002).

Although petitioners make a vague and unavailing argument that they have been deprived of constitutionally guaranteed due process by not receiving personal notice of the hearings on the proposed Facility, they do not challenge the constitutionality of any statute and, therefore, cannot obtain relief via the first exception described above. We addressed the second exception, regarding the General Assembly's intent, in *Clipper I* and do so again *infra.* The third exception is not raised by petitioners and is not, in any event, relevant to the present case in its current posture. Thus, none of the exceptions permitting an action for declaratory relief to be pursued prior to the exhaustion of administrative remedies are applicable in the present case.

remedy found in the Public Utility Companies Article nor does it entitle them to declaratory relief in lieu of the administrative remedy. Were we to allow petitioners' action for declaratory relief to proceed, the Commission (and other similar administrative agencies) would never be able to have a final decision and litigation could continue as each geographically successive owner of property in the vicinity of such a large scale facility files his or her own declaratory judgment action, *ad infinitum.*

██ At the time this action was filed and resolved, petitioners had failed to exhaust the applicable administrative remedy found in the Public Utility Companies Article because *Clipper I* was still pending before the Court of Special Appeals. In *Clipper I,* the central issue was whether the respondents in that case properly applied for rehearing and if such application was then timely, whether the application stayed the time for petitioning for judicial review. Until a final decision was reached in *Clipper I,* it was still possible that the final decision of that case would result in a finding that the petition for judicial review was timely filed. If that result were to have occurred, the *Clipper I* respondents (some of whom were plaintiffs below in this case) would not have exhausted their administrative remedies because they would have succeeded in obtaining a new hearing before the Commission and, under the statutory scheme, would only have been able to seek judicial review after another adverse ruling by the Commission. Therefore, this action for declaratory relief was premature at the time it was filed (and decided) under the doctrine of exhaustion of administrative remedies.

██ Most importantly, we have previously determined that, as a general rule, it is inappropriate for a court to "entertain a declaratory judgment action 'if there is pending, at the time of the commencement of the action for declaratory relief, another action or proceeding involving the same parties and in which the identical issues that are involved in the declaratory action may be adjudicated.'" *Post v. Bregman,* 349 Md. 142, 160, 707 A.2d 806, 814 (1998) (quoting *Waicker v.*

*Colbert,* 347 Md. 108, 113, 699 A.2d 426, 428 (1997)). The reasons for this limitation are, or should be, obvious. In situations such as the present one, where identical parties bring identical claims in two different courts, limited judicial resources are wasted in addition to the possibility that conflicting judgments could be entered by the different courts involved.[27]

Initially, we note that the parties in *Clipper I* and this case were substantially the same at the time that each action was filed. In *Clipper I*, the original plaintiffs were: Eric Tribbey, Paul Sprenger, Russell Bounds, and Troy Gnegy. In the declaratory judgment action, the present case, the original plaintiffs were: Eric Tribbey, Paul Sprenger, Russell Bounds, Paul Roderick, and Rebecca Harvey. The two cases have three original plaintiffs in common. The plaintiffs in both actions were represented by the same counsel. Some of the original plaintiffs in both *Clipper I* and this case dropped out of litigation as each case proceeded through the appeals process, but that fact does not alter our conclusion that the parties were substantially the same for the purposes of determining whether the declaratory judgment was appropriate.

As we have already explained, *supra, Clipper I* was still pending at the time the petition for declaratory relief was filed (and decided) in this case. Even though counsel for petitioners argued, incorrectly, before the Circuit Court for Garrett County that *Clipper I* was not still pending, he conceded that: *"The issues raised in the Circuit Court for Baltimore City are almost exactly the same issues that I raised in Garret County. I mean ... there's no secret there."* (Emphasis added). Counsel was ethically bound to make that admission, but the

---

**27.** The present case demonstrates, to a degree, the amount of time and money consumed by duplicitous litigation. Even though Judge Sherbin very quickly determined that petitioners action for declaratory relief was duplicitous and correctly dismissed it, the filing and subsequent appeals of his decision, and that of the trial court in *Clipper I* have still consumed the resources of the Circuit Courts for Garrett County and Baltimore City, the Court of Special Appeals (twice), and this Court (twice).

concession is fatal to petitioners action for declaratory relief. The parties in *Clipper I* and this case are substantially the same, the issues in both cases were identical at the time they were filed, and at the time the present action for declaratory relief was filed, *Clipper I* was still pending. Judge Sherbin was legally correct in dismissing the petition for declaratory relief.

### B. Notice [28]

Petitioners erroneously conclude that certain language in PUC §§ 7–207(c) and 7–208(d) required that notice of the adjudicatory hearing dates be served on them personally. They imply that publication in a newspaper of general circulation, which occurred in this case, is not proper. The language they rely on is:

> *"(c) Notice to interested persons.*—(1) On receipt of an application for a certificate of public convenience and necessity under this section, the Commission shall provide notice to the Office of Planning and to all other interested persons."

PUC § 7–207(c) (emphasis added). Petitioners also point to and rely on similar language in the section immediately following, § 7–208(d):

> *"(d) Notice and public hearing.*—(1) On the receipt of an application under this section, together with any additional information requested under subsection (c)(2) of this section, the Commission *shall provide notice* to:
>
> (i) all interested persons;. . . ." (Emphasis added.)

Assuming, *arguendo*, that petitioners are interested persons within the meaning of both § § 7–207(c) and 7–208(d), we must only determine whether those sections require personal service of notice to interested parties. In so doing we will also

---

**28.** Judge Eldridge states in his concurring opinion that: "Although I fully agree with the Court that the notice given by the Public Service Commission met the statutory notice requirement, it is not an issue appropriate for declaratory judgment consideration. Section 3–409(b) simply prohibits a declaratory judgment action." We agree.

address whether publication in the local newspapers of general jurisdiction is within the meaning of "notice" as it is used in §§ 7–207(c) and 7–208(d) of the Public Utility Company Article.

We have often said that " 'the cardinal rule of statutory interpretation is to ascertain and effectuate the intent of the legislature[.]' " *Dep't of Human Resources v. Howard,* 397 Md. 353, 361, 918 A.2d 441, 446 (2007) (quoting *Mayor & Town Council of Oakland v. Mayor & Town Council of Mountain Lake Park,* 392 Md. 301, 316, 896 A.2d 1036, 1045 (2006)); *Melton v. State,* 379 Md. 471, 476, 842 A.2d 743, 746 (2004). The first step in determining the intent of the General Assembly is to look " 'to the language of the statute, giving it its natural and ordinary meaning.' " *Howard,* 397 Md. at 361, 918 A.2d at 446–47 (quoting *Dep't of Assessments & Taxation v. Maryland–Nat'l Capital Park & Planning Comm'n,* 348 Md. 2, 13, 702 A.2d 690, 696 (1997)). Although we have expressed this principle of construction repeatedly, our cases have articulated it slightly differently:

> "A court may neither add nor delete language so as to reflect an intent not evidenced in the plain unambiguous language of the statute; nor may it construe the statute with forced or subtle interpretations that limit or extend its application. *County Council v. Dutcher,* 365 Md. 399, 416–17, 780 A.2d 1137, 1147 (2001). In short, if the words of a statute clearly and unambiguously delineate the legislative intent, ours is an ephemeral enterprise. We need investigate no further but simply apply the statute as it reads. *Derry[ v. State],* 358 Md. [325, 335,] at 748 A.2d [478,] at 483 [(2000)]; *Kaczorowski v. City of Baltimore,* 309 Md. 505, 515, 525 A.2d 628, 633 (1987)."

*Price v. State,* 378 Md. 378, 387, 835 A.2d 1221, 1226 (2003). We said in *Chow v. State:*

> " 'If statutory language is unambiguous when construed according to its ordinary and everyday meaning, then we give effect to the statute as it is written. *Collins[ v. State],* 383 Md. [684] at 688–89, 861 A.2d [727] at 730 [(2004)]. If

there is no ambiguity in that language, either inherently or by reference to other relevant laws or circumstances, the inquiry as to legislative intent ends; we do not need to resort to the various, and sometimes inconsistent, external rules of construction, for "the Legislature is presumed to have meant what it said and said what it meant." *Arundel Corp. v. Marie,* 383 Md. 489, 502, 860 A.2d 886, 894 (2004) (quoting *Witte v. Azarian,* 369 Md. 518, 525, 801 A.2d 160, 165 (2002)).' "

*Chow,* 393 Md. 431, 443–44, 903 A.2d 388, 395 (2006) (quoting *Kushell v. Dep't of Natural Resources,* 385 Md. 563, 576–77, 870 A.2d 186, 193–94 (2005)).

██ Returning to the language of the sections at issue, we find no ambiguity. There is no requirement in either PUC § 7–207(c) or PUC § 7–208(d) that *personal service of notice* be given to interested persons. Those sections only require that *notice* be given to interested persons. If we were to agree with petitioners that these sections required personal service of notice, we would be, at best, forcing an interpretation that limits the manner in which notice may be given. At worst, we would be adding text to the statute that would alter its meaning. Doing either would be contrary to the above expressed principles of statutory construction that we have so frequently espoused, rendering them nothing more than guidelines to be cast to the wind.

Moreover, it is reasonable to assume that the General Assembly, had it intended to mean *personal service of notice* in PUC § § 7–207(c) and 7–208(d), would have used language to that effect as it did earlier in the same subtitle. In PUC § 7–204, the General Assembly provided that:

"(a) *Required notice to property owners.*—(1) Notwithstanding any other provision of this article, at least 30 days before a hearing, a public service company shall provide to each owner of land, *by certified mail, written notice* of intent to run a line or similar transmission device over, on, or under the land." (Emphasis added.)

No such specific language was used in §§ 7–207(c) and 7–208(d). Instead, the General Assembly used the more broad

language "shall provide notice." [29] If petitioners' assertion that §§ 7–207(c) and 7–208(d) require individualized service of written notice (presumably by certified mail) is correct, that would mean that the General Assembly expressly required that the Commission provide the affected parties with personal service of notice in § 7–204, then used less specific language in § § 7–207(c) and 7–208(d), and somehow intended all three sections to require personal individualized service of notice. Such a theory is contrary to the established principles of statutory construction. The notice requirement found in PUC § § 7–207(c) and 7–208(d) does not require *personal service of notice.* It only requires reasonable *notice* judged according to the circumstances.

In the present case and under petitioners' theory, all interested persons should receive personal service of notice. Petitioners, without substantive explanation, define interested persons as those owning property contiguous to the Facility and those within half a mile of the project.[30] Despite petitioners' attempts to justify the half mile demarcation, we are persuaded that it is an arbitrary boundary with no basis in law or fact (none provided by petitioners and none revealed by our own research). Without the arbitrary half mile limit, how then would the Commission determine who are interested persons? In the circumstances of this case should individuals whose

---

**29.** Counsel for the Commission, arguing before the Circuit Court for Garrett County, summarized this point:

"The [L]egislature has told the Commission [how] it's supposed to provide notice[ ] [in] [§§ ]7–207 and 7–208, it's by publication in a newspaper. That's how we do it. The [L]egislature knows how to do it differently. In [s]ection 7–204, the [L]egislature did it differently, . . . under that section, we do have to give actual notice to property owners. . . . That section applies only when there's going to be a transmission line that goes over, on, or under the land of the property owner. . . . The [L]egislature tells us, in that circumstance, that we must give actual direct notice, individual notice, to these property owners. The [L]egislature tells us, otherwise, using [§§ ]7–207 and 7–208, you do it by publication, and that's what the Commission did."

**30.** The record does not indicate how many property owners or residents live within a half mile of this 10.8 linear mile facility.

sight lines are affected by the towers be included? They could be five miles or more away located in the mountainous terrain where the Facility is sited. Would environmental groups interested in protecting creatures or habitats in the area be considered interested persons? What about those groups interested in protecting creatures that migrate through the area, but the group is headquartered half a continent away? And what about those thousands who might claim to be, or to pass, within earshot of the spinning blades? Would all of such persons or groups, and many others, be entitled to "personal" individualized service of notice?

We could go on, but the point is clear, especially when the present situation is contrasted with the circumstances envisioned by PUC § 7–204(a) and the express language therein requiring personal service of notice by certified mail to property owners who are going to have power lines placed over, on, or under their property. Such § 7–204(a) property owners will always be a known, definite, and certain group-the persons over whose property the lines will go. Presumably, the utility will know where they are placing their own lines. In the present situation, governed by PUC §§ 7–207(c) and 7–208(d), the potential pool of interested persons, no matter how remotely interested, is virtually limitless. The extent of the pool of interested persons could never be determined. Personal notification of all such potentially interested persons, under the circumstances of this case (or similar cases), would be impossible. The agency could never be sure it had served notice, by certified mail or otherwise, on all interested parties. In essence, the business of the Commission could effectively be brought to a halt. Thus, unless the General Assembly specifies otherwise, notification by advertisement in a newspaper of general circulation in the area of the proposed project is sufficient to meet the notice requirement contained in PUC § § 7–207(c) and 7–208(d) of the Public Utility Companies Article.[31]

---

**31.** We point out that both Eric Tribbey and Russell Bounds, plaintiffs in the present action below, were present at the hearing in question. It

## IV. Conclusion

For the foregoing reasons, we hold that the Circuit Court for Garrett County was correct in granting respondents' motion to dismiss the petition for declaratory relief. The petition for declaratory relief was properly dismissed because the General Assembly provided specific remedies to resolve cases of this nature, petitioners did not exhaust those remedies, and because the petition for declaratory relief was duplicative. We also hold, that under the circumstances of this case, advertisement in newspapers of general circulation met the notice requirement contained in PUC §§ 7–207(c) and 7–208(d).

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS IN THIS COURT AND IN THE COURT OF SPECIAL APPEALS TO BE PAID BY PETITIONERS.**

ELDRIDGE, J., files a concurring opinion joined by RAKER and HARRELL, JJ., JJ.

ELDRIDGE, Judge, concurring:

I concur in both the judgment and in the Court's opinion. Nonetheless, I believe that some of the petitioners' arguments, and the premises upon which they are based, warrant additional comment.

The petitioners have brought this action under the Declaratory Judgments Act, Maryland Code (1974, 2006 Repl. Vol.), §§ 3–401 *et seq.* of the Courts and Judicial Proceedings Article, to challenge an adjudicatory administrative decision of the Public Service Commission. The simple, short and dispositive answer to all of the petitioners' arguments is that no such

---

seems safe to assume that they received notice that the hearing was going to take place and that notice by advertisement was sufficient in their cases. Moreover, the attendance at the hearing was "standing room only." *Clipper I,* 399 Md. at 544–46, 924 A.2d at 1163. Apparently, the advertising of notice of the meeting in the newspapers was effective.

declaratory judgment action will lie. It has been expressly precluded by the General Assembly.

Maryland Code (1998, 2006 Supp.), §§ 3–101 through 3–209 of the Public Utility Companies Article, sets forth a special administrative remedy before the Public Service Commission, with detailed provisions for judicial review, encompassing cases such as the present one. In *Bell Atlantic v. Intercom,* 366 Md. 1, 782 A.2d 791 (2001), this Court comprehensively reviewed these statutory provisions and held that the statutorily specified administrative-judicial review remedy was "primary" and that a litigant "may not circumvent" the statutory remedy "by filing an independent judicial action," *Bell Atlantic v. Intercom, supra,* 366 Md. at 25–26, 782 A.2d at 805–806.

Since the statutory administrative-judicial review remedy was primary, rather than exclusive, the Court in *Bell Atlantic* further held that, when the administrative remedy had been invoked and fully exhausted, and a judicial review action had been filed, the Circuit Court could entertain together the judicial review action and a previously stayed common law tort or breach of contract action. The reason for permitting both actions to be considered together when the administrative-judicial review action was primary, rather than exclusive, is that the litigant may, under the common law actions, be entitled to "remedies beyond the scope of the Commission," *Bell Atlantic,* 366 Md. at 28, 782 A.2d at 807. *See also, e.g., Maryland Reclamation v. Harford County,* 382 Md. 348, 367, 855 A.2d 351, 362 (2004); *Kim v. Comptroller,* 350 Md. 527, 536–537, 714 A.2d 176, 180 (1998); *McCullough v. Wittner,* 314 Md. 602, 612–613, 552 A.2d 881, 886 (1989); *Md.-Nat'l Cap. P. & P. Comm'n v. Crawford,* 307 Md. 1, 18, 511 A.2d 1079, 1087–1088 (1986). Neither *Bell Atlantic* nor any of the other above-cited opinions, however, held that a separate declaratory judgment action would lie to challenge the administrative decision; no declaratory judgment action was brought in any of these cases.

The Declaratory Judgments Act, in § 3–409(b) of the Courts and Judicial Proceedings Article, unambiguously states as follows:

"*Special form of remedy provided by statute.*—If a statute provides a special form of remedy for a specific type of case, that statutory remedy shall be followed in lieu of a proceeding under this subtitle."

This Court has consistently held that, where a statutory administrative-judicial review remedy is exclusive *or primary,* the above-quoted provision in the Declaratory Judgments Act prohibits a declaratory judgment action brought to challenge an adjudicatory administrative decision rendered within the agency's jurisdiction. Although a common law or other type of statutory action may sometimes be entertained along with the judicial review action when the administrative-judicial review remedy is primary instead of exclusive, a declaratory judgment proceeding may not be brought. The plain language of the statute, as well as the opinions of this Court, make this clear.

For example, in *Hartman v. Prince George's County,* 264 Md. 320, 286 A.2d 88 (1972), opponents of an administrative decision, like the petitioners in the present case, attempted to bring a declaratory judgment action challenging the decision. This Court, in an opinion by Chief Judge Hammond, after quoting the language now codified as § 3–409(b) of the Declaratory Judgments Act (then codified as Code (1957, 1971 Repl. Vol.), Art. 31A, § 6), stated (264 Md. at 323, 286 A.2d at 89):

"This Court consistently has applied the rule of § 6 that declarations will not be given where 'a statute provides a special form of remedy for a specific type of case' because 'that form of remedy must be followed.' See *Reiling v. Comptroller,* 201 Md. 384, 94 A.2d 261; *Tanner v. McKeldin,* 202 Md. 569, 97 A.2d 449 (right to vote must be determined as Art. 33 provides and liability to income tax must be determined as the Income Tax Act provides); *Albert v. Public Service Commission,* 209 Md. 27, 41, 120 A.2d 346...."

Similarly, in *Gingell v. Board of County Commissioners for Prince George's County,* 249 Md. 374, 377, 239 A.2d 903, 905 (1968), this Court affirmed the dismissal of a declaratory

judgment action challenging an adjudicatory administrative decision, saying, *inter alia,* that

"where a statute provides a specific form of remedy in a specific case then this remedy must be followed. Code (1957), Article 31A, Section 6. . . ."

Very recently, this Court unanimously reaffirmed the interpretation of the Declaratory Judgments Act that, where a statute provides a primary administrative-judicial review remedy for a specific type of case, a declaratory judgment action challenging an administrative decision in such a case, rendered within the agency's jurisdiction, is prohibited. *Prince George's County v. Ray's Used Cars,* 398 Md. 632, 922 A.2d 495 (2007), and cases there cited.[1] *See also, e.g., Fertitta v. Brown,* 252 Md. 594, 598, 599–600, 251 A.2d 212, 214, 215 (1969) ("We think this is one of those relatively rare instances of a petition for declaratory relief in which a demurrer properly was filed, as a justified challenge to the availability of the remedy sought to be used [to challenge an administrative decision]. * * * Declaratory Proceedings were not intended to and should not serve as a substitute for appellate review or a belated appeal"); *Poe v. Baltimore City,* 241 Md. 303, 315–316, 216 A.2d 707, 713–714 (1966) (discussing and applying the provision of the Declaratory Judgments Act precluding an action under that statute where the Legislature has provided a specific form of remedy); *Baltimore v. Seabolt,* 210 Md. 199, 204, 210, 123 A.2d 207, 209, 212 (1956) (same).[2]

---

1. It should be noted that the statutory administrative-judicial review proceedings applicable in the *Ray's Used Cars, Hartman,* and *Gingell* cases have not been held to be exclusive. The holding that no action could be brought under the Declaratory Judgments Act was deemed applicable regardless of whether the administrative-judicial review proceedings were deemed exclusive or primary. *See Prince George's County v. Ray's Used Cars, supra.*

2. There are a few "exceptions" to the principle that a declaratory judgment action, challenging an adjudicatory administrative decision made within the agency's jurisdiction, will not lie. In reality, however, they may not be "exceptions" but may be consistent with the principle. Thus, where the declaratory judgment challenge is not to the agency's decision within the sphere of its valid jurisdiction, but is directed at the

Consequently, although I agree with the Court that this case "is inexorably linked" to the judicial review action because both actions are challenges to the same administrative decision by the Public Service Commission, the decision in this case is not dependent upon or linked to the decision in the judicial review action. In light of § 3–409(b) of the Declaratory Judgments Act, the instant declaratory judgment action will not lie regardless of whether the Public Service Commission's decision in the judicial review action is upheld or overturned.

The petitioners rely on the fact that, at the time this action was brought, the judicial review action was no longer pending at the circuit court level. Nevertheless, as numerous opinions by this Court illustrate, the status of the judicial review action is immaterial. It does not matter whether the judicial review action had even been filed, or was pending before the agency, or was pending before a circuit court, or was pending before an appellate court, or had been terminated. What precludes an action under the Declaratory Judgments Act is the fact that the General Assembly has enacted "a special form of remedy for [this] specific type of case," § 3–409(b) of the Courts and Judicial Proceedings Article. The existence of the statute providing a special form of remedy, not the status of a case, if any, brought under that statute, is what precludes a declaratory judgment action.

Similarly, it is also immaterial whether the parties in the two actions are the same or are different. Instead, it is the

legislative validity of the enactment as a whole, which the agency is applying, a declaratory judgment will lie under some circumstances. *See, e.g., Montgomery County v. Broadcast Equities,* 360 Md. 438, 452–461, 758 A.2d 995, 1002–1007 (2000); *Harbor Island Marina v. Calvert Co. Bd. of Com'rs,* 286 Md. 303, 308–309, 407 A.2d 738, 741 (1979); *Pressman v. State Tax Commission,* 204 Md. 78, 83–84, 102 A.2d 821, 824–825 (1954). Also, when an agency ultimately decides that it has no jurisdiction over a particular type of case, and that decision is not reversed upon judicial review, a stayed declaratory judgment action involving the controversy may proceed in court. *State v. State Board of Contract Appeals,* 364 Md. 446, 458–459, 773 A.2d 504, 511–512 (2001). The case at bar falls within no "exceptions" to § 3–409(b) of the Declaratory Judgments Act.

provision of a statutory special form of remedy, not who happens to invoke that remedy, which takes the present case outside of the scope of the Declaratory Judgments Act.[3]

The same is true regarding the petitioners' "notice" argument. Although I fully agree with the Court that the notice given by the Public Service Commission met the statutory notice requirement, it is not an issue appropriate for declaratory judgment consideration. Section 3–409(b) simply prohibits a declaratory judgment action. If, in some other case, the notice given by an administrative agency were to violate statutory or constitutional requirements, and an aggrieved person were prejudiced by the lack of notice and unable, because of such insufficient notice, to appear before the agency, a common law mandamus action might well lie to require that administrative officials comply with the law. *Cf. Murrell v. Baltimore*, 376 Md. 170, 192–199, 829 A.2d 548, 561–565 (2003); *Gisriel v. Ocean City Board of Supervisors of Elections*, 345 Md. 477, 497–500, 693 A.2d 757, 767 (1997), and cases there cited. An action under the Declaratory Judgments Act, however, does not lie.

Judges RAKER and HARRELL join this concurring opinion.

---

**3.** It is conceivable, I suppose, that one aggrieved by administrative action may have standing to challenge that action in court, but, because of a peculiar and limiting statute relating to standing before the agency, would not have standing to appear at the adjudicatory administrative proceedings. Under such circumstances, the person may be entitled to bring a common law or equitable action in court challenging the administrative decision. Such person could not, however, bring a declaratory judgment action.