994 A.2d 430 (2010)
413 Md. 638
RRC NORTHEAST, LLC
v.
BAA MARYLAND, INC.
No. 70 September Term, 2009.
Court of Appeals of Maryland.
May 10, 2010.
*432 Catherine M. Manofsky (Kevin F. Arthur and Joseph S. Johnston of Kramon & Graham, P.A., Baltimore, MD), on brief for Petitioner.
Cathy A. Hinger (Womble Carlyle Sandridge & Rice, PLLC, Washington, DC: David B. Hamilton and James P. Scholtes of Womble Carlyle Sandridge & Rice, PLLC, Baltimore, MD), on brief for Respondent.
*433 ARGUED BEFORE BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.
HARRELL, Judge.
The Maryland Aviation Administration ("MAA") owns and operates Baltimore-Washington International/Thurgood Marshall Airport ("BWI" or "the Airport"). MAA leases BWI's retail business concession spaces in its passenger terminals to Respondent, BAA Maryland, Inc. ("BAA"), which, in turn, sublets individual spaces to a variety of individual retail vendors and food service providers. In 2004 and 2005, Petitioner, RRC Northeast, LLC ("RRC"), signed sublease agreements with BAA to operate at BWI several stores specializing in the sale of Maryland/D.C.-themed gifts and souvenirs. According to RRC, the sublease agreements, by incorporating certain other pre-subleasing documents, restricted to four the number of other vendors' competing stores selling similar merchandise to RRC's stores that BAA could sublet at BWI. During 2004, BAA began subletting several retail spaces at BWI to Hudson Group ("Hudson"), which sold Maryland/D.C.-themed gifts and souvenirs in competition with RRC. Eventually, the number of Hudson stores at BWI competing directly with RRC significantly exceeded four. Due to the increased competition, RRC ceased operating at BWI in 2007.
RRC filed a five-count complaint (the "Original Complaint") against BAA and MAA in the Circuit Court for Anne Arundel County, alleging, among other things, that BAA's subleases to Hudson, and the resultant increased competition, caused economic damage to RRC and the ultimate demise of its operations at BWI. After the Circuit Court granted BAA's and MAA's motions to dismiss RRC's complaint, with leave to amend, RRC filed an Amended Complaint (the "Amended Complaint") against BAA only. The Amended Complaint asserted three counts: (1) breach of contract and implied covenant to refrain from destructive competition; (2) breach of contract; and, (3) tortious interference with economic relations. The Circuit Court granted BAA's motion to dismiss RRC's Amended Complaint, but this time with prejudice. In response, RRC filed a motion to alter or amend the judgment and for reconsideration, which included a request for leave to file a second amended complaint. The Circuit Court denied RRC's motion. On direct appeal, the Court of Special Appeals affirmed the Circuit Court's dismissal of RRC's Amended Complaint, holding that (1) RRC's Amended Complaint failed to state any claims upon which relief could be granted, and (2) the Circuit Court did not err by denying RRC leave to amend further the Amended Complaint. For reasons we shall explain, we affirm the judgment of the intermediate appellate court.

STANDARD OF REVIEW
Considering a motion to dismiss a complaint for failure to state a claim upon which relief may be granted, a court must assume the truth of, and view in a light most favorable to the non-moving party, all well-pleaded facts and allegations contained in the complaint, as well as all inferences that may reasonably be drawn from them, and order dismissal only if the allegations and permissible inferences, if true, would not afford relief to the plaintiff, i.e., the allegations do not state a cause of action for which relief may be granted. Lloyd v. Gen. Motors Corp., 397 Md. 108, 121-22, 916 A.2d 257, 264-65 (2007); Sprenger v. Pub. Serv. Comm'n, 400 Md. 1, 21, 926 A.2d 238, 249-50 (2007); Pendleton v. State, 398 Md. 447, 458-60, 921 A.2d 196, 203-04 (2007); Converge Servs. Group, LLC v. Curran, 383 Md. 462, 475, 860 A.2d 871, 878-79 (2004); *434 Fioretti v. Maryland State Bd. of Dental Exam'rs, 351 Md. 66, 71-72, 716 A.2d 258, 261 (1998). Consideration of the universe of "facts" pertinent to the court's analysis of the motion are limited generally to the four corners of the complaint and its incorporated supporting exhibits, if any. Curran, 383 Md. at 475, 860 A.2d at 879. The well-pleaded facts setting forth the cause of action must be pleaded with sufficient specificity; bald assertions and conclusory statements by the pleader will not suffice. Adamson v. Corr. Med. Servs., Inc., 359 Md. 238, 246, 753 A.2d 501, 505 (2000); Bobo v. State, 346 Md. 706, 708-09, 697 A.2d 1371, 1372 (1997). Upon appellate review, the trial court's decision to grant such a motion is analyzed to determine whether the court was legally correct. Sprenger, 400 Md. at 21, 926 A.2d at 250; Benson v. State, 389 Md. 615, 626, 887 A.2d 525, 531 (2005); Fioretti, 351 Md. at 71, 716 A.2d at 261.

FACTS[1]
Founded in 1987, RRC provides specialty retail shops designed to sell regionally-themed souvenirs and gift items to travelers. Pursuant to a contract with MAA, RRC opened its first souvenir and gift retail store, called "Celebrate Maryland," at BWI in 1995. Over the next decade, RRC opened six additional retail stores at BWI, including stores that sold items for children and regional merchandise relating to Maryland and the Washington, D.C. region.
In 2003, MAA changed its model for concessions development and operation at BWI. Under the new model, MAA would no longer contract directly with individual retail and concessions tenants. Instead, MAA would lease all concession spaces at BWI to a single operator, which, in turn, would sublease individual retail spaces to individual tenants.
As part of its new concessions model, in June 2003, MAA issued a Request for Proposals (the "RFP") to obtain a contractor to lease, develop and manage the food, service, and merchandise concessions at BWI. The RFP set forth a proposed concessions plan that included RRC's souvenir and gift store locations, as well as space for, among other things, four additional, competing souvenir and gift stores designated under the category of "News/Gifts." RRC was operating stores at BWI when MAA issued the RFP, and RRC was represented at the pre-bid meeting for the RFP.
BAA submitted a development proposal, entitled the "Lessee's Proposal," in response to the RFP, and MAA selected BAA as the new concessions operator at BWI. In March 2004, MAA and BAA executed a Master Lease (the "Master Lease") and concessions contract. The Master Lease specifically incorporated the terms of the RFP and proposed concessions plan, as well as BAA's "Lessee's Proposal" prepared in response to the RFP.
After BAA entered into the Master Lease with MAA, BAA and RRC began negotiations regarding sublease agreements for RRC's existing and future locations at BWI. According to RRC, during these negotiations, RRC relied on the terms of the RFP, including the proposed concessions plan, which contemplated only four additional stores that would compete with RRC in the market for souvenir and gift sales. In addition, RRC alleged that the representation that RRC's competition would be limited to four additional souvenir and gift stores was a material condition *435 upon which all subsequent agreements between RRC and BAA were based.
In April 2004, BAA and RRC entered into a temporary sublease (the "temporary sublease"), which permitted RRC to continue operating a total of seven existing stores at BWI. The temporary sublease incorporated by reference the terms of the Master Lease between MAA and BAA, which, in turn, incorporated the RFP and the proposed concessions plan. In addition, the temporary sublease provided that RRC's rent would be based on a percentage of its gross revenues from sales at BWI, and limited RRC to using its locations only for "retail concession of gift items focused on the Baltimore region and for no other purpose." The temporary sublease lasted through 2007 and was repeatedly extended by the parties.
BAA and RRC entered into a new and separate sublease agreement in August 2005 (the "2005 sublease") regarding RRC's anticipated new stores at BWI. The 2005 sublease provided RRC with eight future locations at which to operate concession facilities. In addition, the 2005 sublease required RRC to pay BAA a minimum rent and a percentage rent of specific dollar amounts of gross receipts and dictated the specific operations of RRC's stores at BWI, all of which related generally to the sale of souvenirs and gifts. The 2005 sublease contained an express "Good Faith and Fair Dealing" clause, which required BAA and RRC "to perform their obligations under [the] Sublease, and to exercise their rights and remedies under [the] Sublease, in good faith, and consistent with customary standards of commercial reasonableness and fair dealing."[2]
In 2004, BAA began subleasing numerous locations at BWI to Hudson, for the operation of news and gift locations in the same terminals at BWI as stores operated by RRC. By 2007, BAA had permitted Hudson to establish 18 locations at BWI, where it sold gifts and souvenirs in direct competition with RRC. As noted by RRC in its Amended Complaint, that number greatly exceeded the four "News/Gifts" locations contemplated by the RFP's proposed concessions plan. According to RRC, after Hudson opened its competing stores, RRC saw an immediate and severe decline in its sales.
In response to the additional competition from Hudson, RRC requested changes in the terms of its subleases with BAA so that it could remain competitive and improve its sales revenue. According to RRC's Amended Complaint, BAA refused to make any changes or to take any action to halt Hudson's sales of regionally-themed souvenirs and gifts. In November 2006, RRC complained to BAA about the number of Hudson stores that were selling regionally-themed gifts and souvenirs and about RRC's loss of sales. RRC alleged that representatives of BAA responded to RRC's concerns by stating that RRC was "afraid" of competition.
Also in November 2006, in an effort to respond to the competition from Hudson, RRC proposed the sale of a portion of its business to a large national airport concessionaire, HMS Host, Inc. ("Host"). Pursuant to the 2005 sublease, BAA's consent was required before the proposed sale could be consummated. According to *436 RRC's Amended Complaint, BAA "willfully and intentionally and unreasonably" refused to consent to the sale. As noted supra, RRC eventually closed all of its stores at BWI in 2007.
On 27 March 2007, RRC filed suit in the Circuit Court for Anne Arundel County, alleging that BAA breached its sublease contracts with RRC and tortiously interfered with RRC's contractual relations. Count I of the Original Complaint alleged that BAA breached the 2005 sublease's and temporary sublease's express and implied covenants of good faith and fair dealing by allowing Hudson and Hudson-related stores at BWI to sell regionally-themed souvenirs and gifts and other competing merchandise at BWI to an extent exceeding the specifications of the RFP's proposed concession plan, actions which RRC characterized as destructive competition. Count II alleged that BAA breached the temporary sublease[3] by authorizing a number of "News/Gifts" retail locations that far exceeded the four additional locations contemplated by the RFP's proposed concessions plan.[4] Count III alleged that BAA tortiously interfered with RRC's contractual relations with Host by refusing unreasonably to consent to the proposed sale of a portion of RRC's operations to Host.[5] RRC did not attach the RFP, Master Lease, or sublease agreements to its Original Complaint because, according to RRC, its counsel did not believe the voluminous agreements[6] were either useful or necessary at the initial pleading stage of the litigation.[7]
On 18 May 2007, BAA moved to dismiss the entirety of RRC's Original Complaint, contending that RRC failed to state any viable claims. As to Counts I and II, BAA argued that RRC failed to identify actual contract terms that BAA breached. Moreover, as to Count II specifically, BAA argued that RRC was alleging breach of the Master Lease, an agreement to which RRC was not a party. RRC opposed BAA's motion to dismiss. Following a hearing on 24 September 2007, the Circuit Court granted BAA's motion, but gave *437 RRC leave to amend the Original Complaint within 30 days, stating:
All right, obviously the contractual relationship between the parties is complex and, perhaps, the more complex it is, the more one needs to allege to make clear the complaint. But, ultimately, although there is going to be a whole lot of dispute about what these things mean I find it with respect to the first two counts.
The breach of contract counts, that there is a viable cause of action there but that there needs to be a more explicit recitation of what particular contractual terms are allegedly being breached.
I think that that may include information that preceded the entry of the contract, if it is possible, ambiguity in the contract, and there may be a lot of the material for the RFP and the master lease that ultimately finds its way into the allegations.
But, I am really left with a bit of a blank on which particular paragraph of the sublease or what portion of the contractual relationship has been breached.
As I think I suggested by some of my questions to [RRC's counsel], I think there has to be more than ["]my client based upon a series of experiences with the landlord, made certain assumptions as a result of which she assumed certain things were going to happen or certain things were not going to happen.["]
So, I am going to grant the motion to dismiss counts one and two with leave to amend. I will discuss with you momentarily how much time might be appropriate to do that.
With respect to count three, which is the tortious interference count, there has to be some existing contractual relationship in order for someone to tortiously interfere in it.
I really do not see that even as I try to read the complaint in the light most favorable to the pleader. The most we have is a proposal and I am not sure that is sufficient to constitute a tortious interference.
Assuming all the other elements, of course, assuming that there was an interference at all with a contractual relationship. Whether or not there is a potential cause of action for interference with a prospective contractual relationship or economic advantage. I leave that to [RRC's counsel] and his client.
But, with respect to count three, I am going to grant the motion to dismiss and again, I will permit an amendment if there is something simply that has not been pled that might possibly be pled. So, I am not going to dismiss it at this point with prejudice, but I will permit an amendment.[8]
Despite dismissing RRC's Original Complaint, with leave to amend, the judge who did so instructed the parties to "go forward with discovery" and stated that "it would be naive for anybody to assume that this case is going to be terminated with prejudice on all counts." In addition, the court added that "there is going to be something left for a trier [of] fact to deal with at some point," and that it "encourage[d][BAA], unless [BAA] really see[s] something extraordinarily fatal[,] to devote [its] energies to something other than a *438 motion to dismiss" any amended complaint.
On 24 October 2007, RRC filed an Amended Complaint, which essentially reasserted the facts as alleged in the Original Complaint and restated Counts I and II against BAA, in nearly identical form.[9] Count III of the Amended Complaint asserted a claim of tortious interference with economic (rather than contractual) relations, but otherwise essentially restated Count III of the Original Complaint. As noted by the Court of Special Appeals, the most significant changes from the Original Complaint were the new factual allegation by RRC that the 2004 temporary sublease incorporated the RFP by virtue of incorporating the Master Lease between BAA and MAA, and the addition to Count I of the specific contractual language of the 2005 sublease's "Good Faith and Fair Dealing" clause. Again, RRC did not attach the RFP, Master Lease, or sublease agreements to the Amended Complaint.[10]
In response, on 21 November 2007, BAA moved to dismiss RRC's Amended Complaint, with prejudice and without leave to amend, on essentially the same grounds as it had moved to dismiss RRC's Original Complaint. Specifically, BAA contended that RRC's Amended Complaint failed to state claims upon which relief could be granted, and that Counts I and II, in particular, were unchanged essentially from the Original Complaint and should be dismissed for RRC's failure to identify the contract terms allegedly violated by BAA.
On 28 January 2008, a different judge of the Circuit Court than the one who dismissed the Original Complaint issued a written opinion and order dismissing, with prejudice, RRC's Amended Complaint. The discussion section of the court's opinion provided a thorough explanation of its reasons for dismissal:
Initially, this court notes, because Plaintiff again has failed to incorporate or even quote at length[]any provisions either of the sublease, the master lease or the RFP, that this court is unable to consider, interpret and apply the specific terms of the alleged lease. Instead, the Plaintiff has quoted only the good faith and fair dealing paragraph and has alleged in a conclusory manner than "on information and belief" the June, 2003 RFP provided for exclusivity as to retail sales of particular goods at particular locations within the airport as it then existed.[] At oral argument, Plaintiff's counsel argued that no more specifics were needed because Maryland law should impute a contractual duty against unfair competition when a lease contains a percentage of sales term.
This court does not agree with Plaintiff's arguments as to the contract terms for three reasons: First, Plaintiffs have not even alleged their current sublease incorporated the terms of the master lease and the June, 2003 RFP. Second, even if this incorporation explicitly was alleged, this court cannot consider, apply and interpret the contract terms without having the exact words of the documents. The presence or absence of key phrases such as "exclusivity," "including but not limited to," or other qualifications might be dispositive of the issue. The court cannot speculate in such a matter as to what actual contract terms might include. The burden of proof is on the Plaintiff to present them.

*439 Third, cases which Plaintiff has cited as the basis for the court implying exclusivity from either the percentage sales term or the "good faith dealing" terms of the contract do not support its position. In Eastern Shore v. J.D. Associates, 213 F.3d 175 at 185 (2000), the court held that "under Maryland [law], the intention of the parties as expressed in a lease providing for rent [to be] calculated as part of sales, combined with circumstances surrounding the lease's formation, may give rise to [an] implied covenant to refrain from competition that is destructive to the mutual benefit of the contracting parties." But, in that case, the court noted that it must be able to consider the terms "as expressed in the lease...." Plaintiff has prevented the court from considering these terms.
Similarly, in the other cases cited by Plaintiff, the terms of the lease were required for the court's consideration. See Food Fair Stores, Inc. v. Blumberg, 234 Md. 521, at 536, 200 A.2d 166 (1964). Also see Automatic Laundry Service, Inc. v. Demas, 216 Md. 544, 141 A.2d 497 (1958) in which [the] court was willing to imply [an] obligation against competition because the contract was produced and shown to include a requirement for a specific number of laundry machines "to render adequate services to the premisesthat is, to all of the tenants of the trailer park." To the contrary, in the present case there is no allegation that Plaintiff's lease required it to provide services sufficient to satisfy the needs of every customer of the BWI airport (or any particular quantity or proportion of them) and, thus, no allegation sufficient to suggest it was an exclusive contract.
For all these reasons, the court will grant the Motion to Dismiss the contract counts.
As to count 3, the Motion to Dismiss and Plaintiff's Opposition have triangulated on one particular element of the four (4) components of []intensional [sic] interference with economic relations whether the Defendant "acted improperly or wrongfully" using improper means. See Macklin v. Robert Logan Associates, 334 Md. 287, at 301, 639 A.2d 112 (1994). In Macklin, the Court of Appeals stated "conduct that is quite subtle, nevertheless, can be improper or wrongful. It is clear that, to be improper or wrongful, conduct need not be as overt as ... threatening to breach an existing contract [or] threatening to notify unions that an employer was a non-union shop...."
In the amended complaint, Plaintiff does not specify how the "refusal to authorize [Plaintiff's] sale of a portion of its business" was improper. The suggestion that a BAA employee made comments to a[n] RRC employee that "RRC was afraid of competition [and this comment was] intended to intimidate RRC and its management" is insufficient.
For all these reasons, the court will grant the Motion to Dismiss in its entirety.
(Footnote omitted).
On 1 February 2008, RRC filed a motion to alter or amend the judgment of dismissal and for reconsideration, seeking to have the Circuit Court clarify that its dismissal of the Amended Complaint was without prejudice and with leave to amend further. In the motion, RRC alleged, for the first time, that the 2005 sublease incorporated the Master Lease and, therefore, the RFP and proposed concessions plan. In addition, RRC attached to the motion several documents, including copies of the Master Lease, the RFP, and both sublease agreements. On 5 March 2008, the Circuit *440 Court denied summarily RRC's motion, and RRC noted timely an appeal to the Court of Special Appeals.
In an unreported opinion, the intermediate appellate court affirmed the Circuit Court's dismissal, with prejudice, of RRC's Amended Complaint. In its opinion, the Court of Special Appeals held that the Circuit Court did not err in dismissing Count I, RRC's claim for breach of the implied covenant against destructive competition, because, at the time it signed the sublease agreements, "RRC had reason to expect greater competition in the sale of souvenirs and gifts than that contemplated by the RFP." In addition, the appellate court found that the Circuit Court did not err in dismissing Count II, the express breach of contract claim, because RRC failed to allege the existence of a contractual obligation on the part of BAA to limit the number of competing stores to the four contemplated by the RFP's proposed concessions plan. Finally, the court held that the Circuit Court did not abuse its discretion in denying RRC leave to amend further its Amended Complaint.
On 11 May 2009, RRC filed a petition for writ of certiorari, which we granted, 409 Md. 47, 972 A.2d 861 (2009), to consider the following questions, as presented by RRC:
I. Did the Court of Special Appeals err in concluding that a plaintiff's claim for breach of the implied covenant to refrain from destructive competition must be dismissed where the parties' contract did not prohibit all competition, but rather provided specific limits to competition, which one of the parties exceeded?
Did the Court of Special Appeals err in dismissing a breach of contract claim where the plaintiff made allegations regarding the defendant's obligation and breach thereof, but failed to either attach copies of or quote expressly from the contractual documents?
II. Did the Court of Special Appeals err in concluding that the trial court should not have granted leave to amend because the plaintiff had already amended the complaint on one occasion without success?
For reasons we shall explain, we affirm the judgment of the Court of Special Appeals.

ANALYSIS
It is well-established in Maryland that a complaint alleging a breach of contract "must of necessity allege with certainty and definiteness facts showing a contractual obligation owed by the defendant to the plaintiff and a breach of that obligation by defendant." Continental Masonry Co., Inc. v. Verdel Constr. Co., Inc., 279 Md. 476, 480, 369 A.2d 566, 569 (1977) (emphasis in original). In addition, we have observed that "`the necessary allegations of fact sufficient to state a cause of action ... in a simple factual situation vary from those in more complex factual situations and a form of declaration useful in the former situation may not be sufficient as a guide in preparing a declaration in the more complex case.'" Id. (quoting Read Drug v. Colwill Constr., 250 Md. 406, 413, 243 A.2d 548, 553 (1968)). Finally, in considering the sufficiency of a complaint alleging breach of contract, "any ambiguity or uncertainty in the allegations is to be construed against the pleader." Id.; Carder v. Steiner, 225 Md. 271, 276, 170 A.2d 220, 222 (1961).
Like the Court of Special Appeals, for clarity's sake, we shall address Counts I and II in their logical (and chronological) order, rather than their numerical order as they appear in the Amended Complaint. As such, we consider first Count II of RRC's Amended Complaint, followed by Count I.

*441 i. Count IIBreach of Contract
RRC contends that the Court of Special Appeals erred in affirming the Circuit Court's dismissal of Count II of RRC's Amended Complaint, the charge premised upon BAA's alleged breach of the temporary sublease, for failure to state a claim upon which relief may be granted. Specifically, the Court of Special Appeals held that, "[e]ven when read in a light most favorable to RRC, the complaint does not allege that BAA ever promised RRC either orally or in any lease document that, as the developer charged with improving BWI's concourse facilities, it would restrict the number of potentially competing gift stores to four." In addition, the intermediate appellate court noted that neither the alleged incorporation of the RFP's proposed concessions plan into the Master Lease or the temporary sublease, or the alleged fact that RRC "based its negotiations and proposal to BAA in reliance on the RFP concessions plan," could "transform MAA's preliminary proposals for development into an enforceable promise by BAA to RRC to restrict competition." We agree with the judgment of the Court of Special Appeals in this regard, and find that the Circuit Court did not err in dismissing Count II of RRC's Amended Complaint for failure to state a claim upon which relief may be granted.
Count II of RRC's Amended Complaint asserts that BAA breached the terms of the temporary sublease when it allowed Hudson to operate more than the four competing "News/Gifts" stores contemplated by the RFP and proposed concessions plan. Specifically, Count II, entitled "Breach of Contract," of RRC's Amended Complaint states:
43. Plaintiff adopts and incorporates the foregoing allegations of fact contained in paragraphs 1 through 42 as if stated herein.
44. Defendant BAA entered into an agreement with MAA in which in Article I, the "Lessee's Proposal" and the RFP issued by MAA were incorporated in and part of its contract. In its RFP, the MAA identified four locations for possible news/gifts sale locations at BWI. According to the terms of the master lease, the RFP and the subleases between BAA and RRC were incorporated into the master lease. According to the terms of paragraph 33 of the temporary sublease, the terms of the master lease are incorporated by reference. BAA was bound to a configuration of concession sales locations for news/gifts of four locations. RRC reasonably relied on the RFP and the representations concerning news/gift locations contained in the RFP when it entered into the temporary sublease and 2005 sublease agreement with BAA.
45. BAA breached this agreement by allowing Hudson and Hudson-related entities to operate more than the 4 competing stores contemplated by the RFP.
46. As a result of the material breach of the temporary sublease agreement by the Defendant BAA, the Plaintiff was unable to perform all of its obligations under the sublease agreement and suffered damages.
As noted by the Court of Special Appeals, critical to the viability of Count II are the following factual assertions contained in the Amended Complaint:
13. The RFP issued by MAA included a proposed concession plan. In addition to existing RRC's stores, the concession plan, as revised in September 2004, included new spaces *442 for the following concepts: Gourmet Coffee/Newstands-2 locations; Newstands-2 locations; News/Gifts-4 locations; News/Sundries-8 locations; Books/News/Coffee-2 locations. On information and belief, BAA responded to the RFP from MAA.
14. On or about March 10, 2004, and based in part on BAA's response to the RFP, MAA entered into a master lease and concession contract with BAA authorizing BAA to be its agent and to serve as developer of certain areas of BWI and to provide food, retail and service facilities to serve the needs of BWI patrons and employees. On information and belief, the master lease and concession contract between MAA and BAA incorporated the June 2003 RFP and proposed concession plan.
* * *
16. RRC entered negotiations with BAA. RRC based its negotiations and proposal to BAA in reliance on the RFP concession plan, which contemplated only four competing gift stores.
* * *
22. Pursuant to paragraph 33 of the temporary sublease, the terms of the Master Lease between MAA and BAA are incorporated by reference into the temporary sublease and both BAA and RRC are bound by all sublease obligations in the Master Lease.
RRC notes correctly that, in order to state a claim for breach of contract, a plaintiff need only allege the existence of a contractual obligation owed by the defendant to the plaintiff, and a material breach of that obligation by the defendant. Taylor v. NationsBank, N.A., 365 Md. 166, 175, 776 A.2d 645, 651 (2001) ("To prevail in an action for breach of contract, a plaintiff must prove that the defendant owed the plaintiff a contractual obligation and that the defendant breached that obligation."). The allegations contained in Count II of RRC's Amended Complaint, however, fail to satisfy this threshold.
Although Count II states in conclusory fashion that "BAA was bound to a configuration of concession sales locations for news/gifts of four locations," nowhere in the Amended Complaint does RRC allege an explicit or implicit promise by BAA to be so bound. Rather, the Amended Complaint alleges merely that the RFP, which contained a "proposed" concessions plan that "contemplated" four additional "possible" locations for future "News/Gifts" stores, was incorporated into the temporary sublease, that RRC based its negotiations in reliance upon the RFP's proposed concessions plan, and that, by allowing Hudson to open more than four new "News/Gifts" stores, BAA violated the RFP's proposed concessions plan. RRC makes no allegation, beyond the conclusory statement noted supra, that BAA ever obligated itself in any manner to a defined limit of four additional "News/Gifts" locations. In fact, that the 2005 sublease permitted RRC to open eight additional "News/Gifts" stores demonstrates clearly that the RFP did not serve to bind BAA to permit only four additional "News/Gifts" stores. In addition, RRC's Amended Complaint states that the Master Lease incorporated BAA's "Lessee's Proposal," i.e., BAA's response to MAA's RFP and proposed concessions plan, suggesting further that BAA never bound itself to the proposed concessions plan contained in the RFP. As such, in Count II of the Amended Complaint, RRC failed to meet its duty under Continental Masonry to plead with certainty and definiteness a contract term, *443 allegedly breached by BAA, that limited to four the number of additional "News/Gifts" locations that BAA could permit. Continental Masonry, 279 Md. at 481, 369 A.2d at 569 (noting that "skeletal factual allegations accompanied by nothing more than mere conclusions and general averments of a breach of a contractual duty do not suffice to establish [the plaintiff's] somewhat unique and sophisticated claim"). Thus, the Court of Special Appeals did not err when it affirmed the Circuit Court's dismissal of Count II for failure to state a claim upon which relief may be granted.

ii. Breach of Implied Covenant Against Destructive Competition
RRC contends that the Court of Special Appeals erred in affirming the Circuit Court's dismissal of Count I of RRC's Amended Complaint for failure to state a claim upon which relief may be granted. RRC submits that two cases, namely, Automatic Laundry Service, Inc. v. Demas, 216 Md. 544, 141 A.2d 497 (1958), and Eastern Shore Markets, Inc. v. J.D. Associates Limited Partnership, 213 F.3d 175 (4th Cir.2000) (applying Maryland law), when read together, establish that: (1) the duty of good faith and fair dealing, which binds every party to a contract and which was stated explicitly in the 2005 sublease, implies a covenant against destructive competition where (a) a tenant is bound by a percentage lease and (b) the parties contract to limit competition with that tenant (in the contract or another document) by creating exclusivity or a particularly limited level of competition; and, (2) when a plaintiff alleges an implied covenant imposing a duty to refrain from destructive competition and a subsequent breach of that duty, a court may not dismiss the complaint. Thus, RRC posits that, because it alleged a breach by BAA of its duty to refrain from destructive competition (citing the RFP's proposed concessions plan contemplating four additional "News/Gifts" locations and the number of Hudson stores permitted by BAA well in excess of four), the Circuit Court should not have dismissed Count I of the Amended Complaint.
Upon examination of Automatic Laundry and Eastern Shore Markets, the Court of Special Appeals held that "an implied covenant against destructive competition cannot be inferred from a shopping center lease where the tenant has reason to expect expanding competition at the time of execution of the lease." In the intermediate appellate court's opinion, because the Amended Complaint's allegations "reveal[] that, at the time RRC executed the 2005 sublease, [RRC] had reason to expect unlimited competition in the sale of regionally themed gifts and souvenirs" beyond the level of competition contemplated by the RFP and proposed concessions plan, the Circuit Court dismissed correctly Count I of RRC's Amended Complaint. In addition, the court opined that "RRC's allegations that the 2005 sublease contained a covenant of good faith, provided for RRC to pay a percentage of gross receipts as rent, and restricted some of RRC's new stores to selling only regionally themed gifts and souvenirs" provided an insufficient basis for the court to infer from the provisions of the 2005 sublease or temporary sublease an implied covenant against destructive competition in the business of selling regionally-themed gifts and souvenirs. We agree with the Court of Special Appeals's determination.[11]
*444 Count I of RRC's Amended Complaint charges BAA with breaching its implied obligations under the 2005 sublease and temporary sublease[12] to refrain from engaging in destructive competition by allowing Hudson to sell regionally-themed gifts and souvenirs in more locations than the four stores contemplated by the RFP's proposed concessions plan.[13] Specifically, Count I, entitled "Breach of Contract and Implied Breach of Contract," of RRC's Amended Complaint alleges the following:
39. Plaintiff adopts and incorporates the foregoing allegations of fact in paragraphs 1 through 38 as if stated herein.
40. Defendant BAA has an express obligation under Article 12.17 of the 2005 sublease agreement as well as an implied covenant of good faith and fair dealing under the sublease agreement and temporary sublease to perform its obligations in good faith. Article 12.17 of the Sublease states: "BAAM [BAA] and Subtenant agree to perform their obligations under this Sublease and to exercise their rights and remedies under this Sublease, in good faith and consistent with customary standards of commercial reasonableness and fair dealing." By authorizing additional vendors to sell souvenirs and gifts based on themes of Baltimore, Washington and the State of Maryland at BWI more than those delineated in the concession plan of the RFP, BAA acted in bad faith and breached the sublease agreement and its implied covenant of good faith.
41. Defendant BAA breached its express obligation of good faith under the sublease agreement and its implied obligation of good faith and fair dealing by: (1) allowing Hudson and Hudson-related stores at BWI to sell regionally-themed souvenirs and gifts and other competing merchandise at BWI to an extent beyond the specifications in the state-issued RFP; (2) increasing the number of Hudson and Hudson-related stores at BWI; and (3) permitting Hudson and Hudson-related stores selling regionally-themed souvenirs and other competing merchandise at BWI to devote expanded shelf space to those items. Defendant BAA's actions were in bad faith and its conduct was not commercially reasonable under the circumstances. BAA did not believe in good faith *445 that the sale of regionally-themed souvenir and gift sales by Hudson and Hudson-related stores would be harmless to Plaintiff and knew that the competing sales would constitute destructive competition.
42. As a result of the material breach of the sublease by the Defendant, the Plaintiff was unable to perform all of its obligations under the sublease agreement and suffered damages.
In support of its contention that the allegations contained in the Amended Complaint state sufficiently a claim for breach of the implied covenant against destructive competition, RRC directs our attention to the following factual allegations in the Amended Complaint:
13. The RFP issued by MAA included a proposed concession plan. In addition to existing RRC's stores, the concession plan, as revised in September 2004, included new spaces for the following concepts: Gourmet Coffee/Newstands-2 locations; Newstands-2 locations; News/Gifts-4 locations; News/Sundries-8 locations; Books/News/Coffee-2 locations. On information and belief, BAA responded to the RFP from MAA.
14. On or about March 10, 2004, and based in part on BAA's response to the RFP, MAA entered into a master lease and concession contract with BAA authorizing BAA to be its agent and to serve as developer of certain areas of BWI and to provide food, retail and service facilities to serve the needs of BWI patrons and employees. On information and belief, the master lease and concession contract between MAA and BAA incorporated the June 2003 RFP and proposed concession plan.
* * *
16. RRC entered negotiations with BAA. RRC based its negotiations and proposal to BAA in reliance on the RFP concession plan, which contemplated only four competing gift stores.
17. The RFP concession plan was a material condition on which all subsequent agreements between RRC and BAA were based.
* * *
22. Pursuant to paragraph 33 of the temporary sublease, the terms of the Master Lease between MAA and BAA are incorporated by reference into the temporary sublease and both BAA and RRC are bound by all sublease obligations in the Master Lease.[[14]]
* * *
25. Pursuant to Article 2.1.1 of the 2005 sublease agreement, RRC was provided eight future locations at BWI to operate concession facilities. The specific operations for those locations were delineated in exhibit D to the sublease and specified patriotic themed souvenirs, collectibles and gifts for the Best of Washington store; regionally-themed Maryland, Baltimore and Washington souvenirs, collectibles and gifts for the Celebrate Maryland stores; children's toys, gifts and collectibles for the Just Plane Kids store; and products about women, their careers, their experiences and their relationships for the Women Rock store.

*446 26. Pursuant to the sublease agreement, both RRC and BAA have an express obligation of good faith and fair dealing. Article 12.17 of the 2005 sublease provides:
Good Faith and Fair Dealing
BAAM and Subtenant agree to perform their obligations under this Sublease, and to exercise their rights and remedies under this Sublease, in good faith, and consistent with customary standards of commercial reasonableness and fair dealing.
27. Pursuant to the sublease agreement of 2005, RRC was obligated to pay to BAA a minimum rent and a percentage rent of specific dollar amounts of gross receipts which is defined as all monies of any kind payable to RRC or derived by RRC from the operation of its BWI stores.
* * *
29. On information and belief, in or about 2004, MAA and BAA approved agreements permitting a vendor called Hudson Group ("Hudson"), a New Jersey-based firm with extensive operations nationwide, to operate multiple news and gifts concessions in areas at BWI in the same terminals as stores operated by RRC. Hudson is neither a [Disadvantage Business Enterprise] nor a[] [Minority Business Enterprise]. In a sharp departure from the original business expectations of RRC based on its reliance on the concession plan, BAA permitted Hudson and entities related to Hudson to sell regionally-themed souvenirs related to Baltimore, Washington and the State of Maryland in more stores at BWI than was anticipated by RRC pursuant to the concession plan.
* * *
31. By 2007, eighteen locations of Hudson and Hudson related stores were selling regionally themed gifts and souvenirs at BWI, far in excess of the four news/gifts locations in the retail concession plan of the RFP.
In Automatic Laundry, we recognized that a court may imply, under appropriate circumstances and based on certain contractual language, and enforce a covenant to refrain from engaging in destructive competition. 216 Md. at 549-551, 141 A.2d at 500-01. There, the plaintiff and defendants entered into a lease, under which the plaintiff obtained the right to install, maintain, and operate a sufficient number of washing machines to service the occupants of defendants' trailer park. Id. at 547, 141 A.2d at 499. In exchange for the right to install its machines at the park, the plaintiff agreed to pay the defendants 25 percent of the gross receipts from each machine. Id. While the lease was in effect, one of the defendants installed his own washing machines at the trailer park, in direct competition with the plaintiff's machines, resulting in a dramatic decline in the plaintiff's gross receipts. Id. at 548, 141 A.2d at 499. The plaintiff brought suit, but its complaint was dismissed. Id. at 546, 141 A.2d at 498.
On appeal, we reversed, concluding that the defendant had a "duty of loyalty to refrain from destructive competition," which included "an obligation not to render valueless his contract with Automatic by permitting the destructive competition here shown to have been created by the introduction of the competing machines." Id. at 549-51, 141 A.2d at 500-01. In support of that holding, the Court reasoned:
It is quite plain that there is no express grant of an exclusive right, and any such right would, therefore, have to arise, if at all, by inference. Though we *447 are somewhat inclined to the view that such an inference should be drawn, we do not find it necessary to decide the question, for we think that the duty of loyalty to refrain from destructive competition is sufficiently established and was clearly violated. . . .
In the first place, the agreement is one to share profits on the basis of gross receipts, and in the next place Automatic is obligated to install enough machines to render adequate service to the premises. The evidence shows that the Trailer Park had a capacity of some twenty-four families. The Demas contend that the laundry facilities at the Trailer Park also served members of the Aberdeen community not residing at the Park. The figures as to earnings after [the plaintiff's] or [the defendant's] competing machines were installed show that there was no need for a second group of machines to fulfill Automatic's obligation, and that the profit to Automatic under its agreement with [the defendant] was almost wiped out.

Corbin on Contracts, Vol. 3, § 568, pp. 200-201, states with regard to the doctrine of implication: "In any commercial agreement in which the compensation promised by one to the other is a percentage of profits or receipts, or is a royalty on goods sold, manufactured or mined, there will nearly always be found an implied promise of diligent and careful performance in good faith and of forbearance to make performance impossible by going out of business or otherwise."
Id. at 549-50, 141 A.2d at 500.
In Eastern Shore Markets, the federal Court of Appeals for the Fourth Circuit, applying Maryland law and noting specifically this Court's opinion in Automatic Laundry, recognized similarly the potential for a claim based on an alleged breach of the implied covenant to refrain from engaging in destructive competition. 213 F.3d at 183-85. In that case, the parties entered into a lease under which the plaintiff leased space for use as a grocery store in the defendant's strip mall. Id. at 178. The terms of the lease: (1) obligated the plaintiff to pay the defendant a base rent, plus a "percentage rent" of 1.25% of the store's annual gross sales in excess of $10 million; (2) although not giving explicitly the plaintiff an exclusive right to be the only grocery store in the shopping center, incorporated a site plan that was "approved by the parties" and which outlined and labeled the remaining space in the mall as future department and retail stores; (3) restricted the plaintiff to operating only a "supermarket primarily for sale of food"; and, (4) required the plaintiff to include in its gross sales, and therefore its percentage rent computation, the revenues from any other grocery stores it established within a three-mile radius of the mall. Id. While the lease was in effect, the defendant leased one of the remaining spaces, listed in the site plan as a "future department store," to a developer who constructed a competing grocery store. Id. at 179. Thereafter, the plaintiff's monthly sales were reduced significantly. Id.
In response, the plaintiff filed suit against the defendant in the U.S. District Court for the District of Maryland, alleging that the defendant engaged in destructive competition. Id. Upon the defendant's motion, the plaintiff's action was dismissed for failure to state a viable claim. Id. at 180. On appeal, the Court of Appeals for the Fourth Circuit reversed the dismissal, stating that, "under Maryland law, the intentions of parties as expressed in the lease providing for rent calculated in part as a percentage of sales, combined with the circumstances surrounding *448 the lease's formation, may give rise to an implied covenant to refrain from competition that is destructive to the mutual benefit of the contracting parties."[15]Id. at 185. The court took special note of the "circumstances surrounding the lease's formation," including a "shopping-center site plan, which was made part of the lease, and its inclusion of [the plaintiff's] store as the only grocery store in the shopping center," which was attached to the plaintiff's complaint. Id. at 184-85. In addition, in reaching its conclusion that the plaintiff's complaint should not have been dismissed, the court observed:
Eastern Shore alleges in its complaint that J.D. Associates willfully undermined its profitability and threatened its viability. It asserts that certain features of its lease agreement contemplate a particular tenant mix and an important role for its store as the only grocery store within the shopping center. Viewing the complaint in the light most favorable to Eastern Shore, as we are required to do on review of a 12(b)(6) motion, we cannot conclude that Maryland courts would categorically refuse to recognize an implied covenant to refrain from destructive competition in the lease between Eastern Shore and J.D. Associates. We recognize that further proceedings below may reveal facts and defenses counseling against the implication of such a covenant. But without the benefit at this stage of the right to evaluate facts, we conclude that this claim should not have been dismissed under the rigid standards that control the disposition of 12(b)(6) motions.
Id. at 185.
Another case from this Court, Food Fair Stores, Inc. v. Blumberg, 234 Md. 521, 200 A.2d 166 (1964), is useful to consider in determining the viability of Count I of RRC's Amended Complaint. As noted by the Court of Special Appeals in its opinion in the present case, although Food Fair is not precisely a destructive competition case, it is nevertheless instructive. In Food Fair, the plaintiffs leased to the defendants a store building, in which the defendants operated a supermarket, and adjacent parking areas. Id. at 526, 200 A.2d at 169. Under the terms of one of the leases between the parties, the defendants owed to the plaintiffs yearly rent of $1,200, plus 1% of the gross sales in excess of $2,320,000, up to $2,700,000. Id. at 533, 200 A.2d at 173. The defendants proceeded to open two additional stores in the area which, according to the plaintiffs' complaint, violated the lease's implied covenant on the part of the defendants to refrain from diverting sales from the *449 leased premises. Id. at 533-35, 200 A.2d at 173-74.
Upon the defendants' motion, the trial court dismissed the plaintiffs' complaint. We affirmed, stating:
We are dealing here only with an alleged implied covenant. There was, of course, no legal obstacle to prevent an express covenant being placed in the lease, so as to provide for [the plaintiffs'] contentions here. After considering the nature of [the defendants'] business and the terms of the leases and after construing them in the light of the circumstances surrounding the parties at the time the leases were made, we are unable to conclude the parties impliedly covenanted that the [defendants] would not expand their business in the area of [the plaintiffs'] store.
Id. at 535, 200 A.2d at 174 (emphasis in original). In support of our conclusion, we noted that: (1) there was no allegation of a wilful intent on the part of the defendants to divert sales from the plaintiffs' store, nor was there an abandonment of the business; (2) nothing in the record showed a lack of good faith or fair dealing by the defendants; and, (3) the leases involved were lengthy, and entered into only after prolonged negotiations, with provisions covering many contingencies. Id.
Taken together, Automatic Laundry, Eastern Shore Markets, and Food Fair, establish that an implied covenant to refrain from destructive competition may be inferred from a percentage lease, based on the duty of good faith and fair dealing, where the intentions of the parties, as indicated by the terms of the lease and the circumstances surrounding the formation of the lease, suggest that such an inference is appropriate, namely, by limiting competition to a particular level with, or granting exclusivity to, the plaintiff, either in the contract or an incorporated pre-lease document. In Automatic Laundry, the terms of the lease stated that the plaintiff was to install machines sufficient to meet the demands of the trailer park, a clear indication that the contract implied the plaintiff's right to expect exclusivity. Similarly, in Eastern Shore Markets, the development plan incorporated into the lease indicated clearly that the defendants had no plans to permit the development of an additional grocery store in the shopping center that would compete with the plaintiff's store. As such, in those cases, the courts correctly inferred from the parties' inherent duties of good faith and fair dealing the existence of an implied covenant to refrain from destructive competition. On the other hand, in Food Fair, the complex and sophisticated lease contained no suggestion that the parties intended for the defendants to be restrained from opening additional stores in the area that might divert sales revenue from the store leased from the plaintiffs. Therefore, the Court noted appropriately that no implied covenant to restrict additional competition should be inferred from the terms of the parties' lease.
With the appropriate standard now illuminated for determining whether an implied covenant to refrain from destructive competition should be inferred from a percentage lease, we examine whether the terms of the sublease agreements, as alleged in RRC's Amended Complaint, and the circumstances surrounding their creation, plead a triable issue of whether the parties intended for competition to be limited to some definable amount and, therefore, the Circuit Court should have permitted RRC to proceed with Count I based on BAA's alleged breach of the implied covenant to refrain from destructive competition.
Despite RRC's protestations to the contrary, the Amended Complaint does not *450 allege sufficiently that RRC and BAA contracted to limit competition, such that the Circuit Court or other trier-of-fact could have inferred reasonably an implied covenant to refrain from destructive competition. In essence, RRC's Amended Complaint asserts that the RFP's proposed concessions plan contemplated the addition of four "News/Gifts" locations in competition with RRC's stores, that the RFP's proposed concessions plan was incorporated generally into RRC's subleases, and that RRC based in part its negotiations with BAA in reliance on the RFP's proposed concessions plan. In conclusory fashion, the Amended Complaint states additionally that "BAA was bound to a configuration of concession sales locations for news/gifts of four locations." RRC's allegations, however, fail to suggest that the parties intended for competition to be limited to the four "News/Gifts" locations contemplated by the RFP's proposed concessions plan, such that the Circuit Court could infer the existence of an implied covenant on the part of BAA to refrain from destructive competition.
As noted by the Court of Special Appeals in its unreported opinion in this case, the Amended Complaint did not allege that the RFP's proposed concessions plan established an "immutable plan for the future development and leasing of retail space at BWI." Although RRC need not have alleged that the RFP was "immutable," its allegations fail to establish that the RFP was anything more than a development plan proposed by MAA in its effort to elicit proposals from potential contractors. In fact, RRC's Amended Complaint states that the 2005 sublease authorized RRC to open up eight new gift stores, a clear indication that the RFP's proposed concessions plan was not a firm limit upon, or a promise by, BAA to permit only four additional "News/Gifts" stores in sum, and that, in fact, RRC had reason to expect greater competition in the sale of souvenirs and gifts than that contemplated by the RFP. In addition, the Amended Complaint states that the "Lessee's Proposal" was incorporated into the Master Lease along with the RFP's proposed concessions plan, providing further indication that the RFP's proposed concession plan did not amount to a limit on competition to which BAA had agreed. As such, because RRC's Amended Complaint fails to allege facts sufficient to infer that RRC and BAA, when they entered into the sublease agreements, intended for RRC's competition to be limited contractually to four additional stores, the Circuit Court correctly determined that Count I of RRC's Amended Complaint did not state a claim for breach of an implied covenant against destructive competition. As with Count II, RRC's allegations that it relied on the RFP's proposed concessions plan during its sublease negotiations or that the RFP's proposed concessions plan was a material condition upon which the subsequent sublease agreements were based do not transform a mere development proposal, which did not establish clearly a limit upon the number of additional "News/Gifts" stores at BWI, into a promise by BAA to limit competition from which a court or fact-finder could infer an implied covenant on BAA's part to refrain from destructive competition.[16]

*451 iii. Denial of Motion for Leave to Amend
In its motion to alter or amend the judgment of dismissal or for reconsideration, RRC requested that the Circuit Court "clarify" that the dismissal was without prejudice and with leave to amend the complaint a second time. The court denied the motion, thereby stating explicitly that it did not grant RRC leave to amend the Amended Complaint. RRC contends that the Circuit Court's denial of its motion to amend further the Amended Complaint was erroneous, and asserts that it should have been permitted leave to amend its Amended Complaint to attach the RFP, subleases, and Master Lease, and to restate its claims.[17] We disagree.
In general, the denial of a motion to alter or amend a judgment or for reconsideration is reviewed by appellate courts for abuse of discretion. Wilson-X v. Dep't of Human Res., 403 Md. 667, 674-75, 944 A.2d 509, 514 (2008). Nevertheless, under Maryland Rule 2-341(c), amendments to pleadings are allowed "when justice so permits." Md. Rule 2-341(c) (2008).[18] Although it is well-established *452 that leave to amend complaints should be granted freely to serve the ends of justice and that it is the rare situation in which a court should not grant leave to amend, see Hall v. Barlow Corp., 255 Md. 28, 40-41, 255 A.2d 873, 879 (1969), an amendment should not be allowed if it would result in prejudice to the opposing party or undue delay, such as where amendment would be futile because the claim is flawed irreparably. See Robertson v. Davis, 271 Md. 708, 710, 319 A.2d 816, 818 (1974).
In dismissing Counts I and II of RRC's Original Complaint, the Circuit Court, in essence, directed RRC to identify specific contract terms in the 2005 sublease and/or the temporary sublease from which the court could infer, respectively, an implied covenant on BAA's part to refrain from engaging in destructive competition or an express contractual obligation by BAA to limit the number of competing "News/Gifts" stores to four. In its Amended Complaint, RRC failed to address the Circuit Court's concerns, merely adding a new factual allegation that the temporary sublease incorporated the RFP and quoting the specific language of the 2005 sublease's express good faith and fair dealing clause. As noted by the Circuit Court, the Amended Complaint failed to identify specific contract terms that imposed upon BAA an obligation to restrict the number of competing "News/Gifts" stores to four. Although RRC's motion to alter or amend attached the RFP, Master Lease, and sublease documents, it nevertheless failed to direct the Circuit Court's attention to any terms in those documents that, if pled, would have improved the twice-dismissed breach of contract claims by answering the key question, namely, what enforceable sublease term required BAA to limit the number of competing "News/Gifts" stores to four.
Noting RRC's continued inability to proffer facts that would improve its complaint in accordance with the Circuit Court's instructions, the Court of Special Appeals found that there was "no reason to believe" that RRC could allege any new facts to support a claim for breach, of an implied covenant on the part of BAA against destructive competition or of any contractual obligation to limit competition owed by BAA to RRC, even if it had been able to amend further its Amended Complaint to include the text of the RFP, the Master Lease, and the sublease agreements. We agree with the intermediate appellate court's conclusion in this regard. Because RRC failed to identify, in its Original Complaint, Amended Complaint, or motion to alter or amend or for reconsideration, any specific contractual terms obligating BAA to limit the number of competing "News/Gifts" stores to four, we hold that the Circuit Court did not abuse its discretion in denying RRC leave to amend Counts I and II, because any such further amendment would have been futile and would have resulted in undue delay.[19]

*453 CONCLUSION

Throughout its Original Complaint, Amended Complaint, and motion to alter or amend or for reconsideration, RRC was unable to present to the Circuit Court sufficient facts from which the court could infer either an express contractual obligation by BAA to limit the number of competing "News/Gifts" stores to four or an implied duty obligating BAA to refrain from engaging in destructive competition by permitting Hudson to operate stores in excess of the number contemplated by the RFP's proposed concessions plan. As such, the Court of Special Appeals did not err in affirming the judgment of the Circuit Court dismissing Counts I and II of RRC's Amended Complaint. Furthermore, we conclude that the intermediate appellate court found correctly that the Circuit Court did not abuse its discretion in refusing to permit RRC to amend further its Amended Complaint on the grounds that further amendment would be futile and result in undue delay.
JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED; COSTS TO BE PAID BY PETITIONER.
NOTES
[1] In accordance with the applicable standard of review, the "facts," as recounted herein, are drawn directly from RRC's Amended Complaint.
[2] In its Amended Complaint, RRC did not allege specifically that the 2005 sublease incorporated the terms of the Master Lease between BAA and MAA or that the terms of the RFP were incorporated into the 2005 sublease, as it had with regard to the temporary sublease. It made those allegations, however, in its motion to alter or amend the judgment and for reconsideration, and, according to its brief, would have incorporated such allegations into a second amended complaint were it allowed to file one.
[3] As noted by the Court of Special Appeals, Count II of RRC's Original Complaint charged BAA with breaching "this agreement," without specifying which agreement. RRC's Amended Complaint, however, made plain that Count II was based on a breach of the temporary sublease.
[4] In the Original Complaint, RRC did not allege, in any fashion, that the temporary sublease incorporated the RFP's proposed concessions plan or the Master Lease between BAA and MAA. That allegation first appeared in RRC's Amended Complaint.
[5] The Original Complaint also contained additional claims against BAA, as well as a claim against MAA. Count IV charged both BAA and MAA with unfair competition by leasing stores to Hudson, and was essentially a restatement of Count I. Count V charged BAA with breach of contract and illegal discrimination by permitting Hudson, a company that was not a disadvantaged business entity like RRC, to sell competing products on terms different from those offered to RRC, in violation of federal regulations and BAA's obligations under the Master Lease. Following MAA's motion to dismiss RRC's claim against it in Count IV based on RRC's failure to comply with the Maryland Tort Claims Act, RRC withdrew, voluntarily and without prejudice, its claim against MAA in Count IV.
[6] RRC describes the Master Lease as "telephone-book-sized."
[7] RRC also contends that, when it filed its Original Complaint, it did not have the final, executed copy of the Master Lease between BAA and MAA because the Master Lease was confidential. According to RRC, it requested a copy of the Master Lease from BAA, but BAA had not responded yet to RRC's request when RRC filed its Amended Complaint. RRC asserts that BAA produced the executed Master Lease on 22 January 2008, the same day the Circuit Court dismissed RRC's Amended Complaint.
[8] In addition, the Circuit Court dismissed, with prejudice, Count IV, finding that "this complaint has not stated a cause of action for unfair competition against the BAA or the MAA," and noted that the allegations contained in Count V "would be premature without there having been first administrative proceedings that are required," granting dismissal with leave to amend.
[9] Because RRC did not reassert Counts IV and V against BAA in its Amended Complaint, they are not relevant to the issues presently before the Court.
[10] According to RRC, at this point, BAA still had not yet provided to RRC a copy of the executed Master Lease.
[11] In its brief, BAA contends that a claim for destructive competition should no longer be recognized in Maryland. It argues that "the theory is contrary to all notions of contemporary commercial leasing which is premised on lessors and lessees being bound by the terms of their complex, fully integrated contracts that specifically articulate the rights and obligations of commercial" parties. Nevertheless, the cases establishing such a claim have not been overruled, which will not happen today.
[12] It is unclear from the language of Count I of RRC's Amended Complaint whether RRC contends that that count pertains to BAA's alleged duties under the 2005 sublease or the temporary sublease. For purposes of this opinion, we shall assume that Count I alleges breaches of both sublease agreements.
[13] Although Count I is described in RRC's Amended Complaint as an action for breach of the 2005 sublease's covenant of good faith and fair dealing, RRC's Amended Complaint and its brief before this Court make clear that the theory of liability underlying Count I of the Amended Complaint is that the good faith and fair dealing clause of the 2005 sublease, and BAA's implied duty of good faith and fair dealing that binds any party to a contract, implied a covenant on the part of BAA to refrain from engaging in destructive competition, which, according to RRC, BAA breached by permitting Hudson to open additional "News/Gifts" locations well in excess of the four contemplated by the RFP's proposed concessions plan.
[14] As noted supra, RRC's Amended Complaint failed to allege that the RFP was incorporated into the 2005 sublease. RRC first made that contention to the Circuit Court in its motion to alter or amend or for reconsideration that followed dismissal of its Amended Complaint.
[15] In its explanation, the federal appellate court rejected the plaintiff's contention that the combination of the terms of the lease and the shopping center site plan demonstrated that the parties understood that the plaintiff would be the only grocery store in the shopping center and that, therefore, an implied covenant of exclusivity arose. Specifically, the court opined:

To the extent that Eastern Shore alleges a breach of an implied covenant of exclusivity, we agree with the district court that such an allegation fails to state a claim upon which relief can be granted. A covenant of exclusivity is a valuable benefit for which parties to agreements traditionally bargain and on which they generally either reach or deliberately decide not to reach agreement. Therefore, when parties do not include such a clause in their agreement, we are not free to insert one by implication.. . . We have found no published opinion in which a court has held that, in Maryland, a restrictive covenant of exclusivity arises out of the implied covenant of good faith and fair dealing.
Id. at 184. Rather, the court found that an enforceable promise to refrain from destructive competition arose because the shopping center site plan, which apparently limited competition, was incorporated into the lease. Id. at 185.
[16] Throughout its brief, RRC accuses repeatedly the Circuit Court and the Court of Special Appeals of requiring erroneously it to attach to the Amended Complaint the actual contractual documents that it contends were breached by BAA. Such accusations are unfounded. The Court of Special Appeals explained specifically that RRC's failure to attach its sublease agreements to the Amended Complaint was not a basis for affirming the Circuit Court's dismissal. Rather, failure to quote from or attach the express contract terms was only one of the reasons the Circuit Court gave for dismissal. The intermediate appellate court based its decision on the fact that RRC failed, explicitly or implicitly, to allege sufficiently the contract terms that it contends demonstrate that BAA promised to limit competition to four additional "News/Gifts" locations.
[17] In the Court of Special Appeals, RRC contended specifically that the Circuit Court erred in denying it leave to amend its Amended Complaint to revise Count III, the tortious interference with economic relations claim, to allege facts showing that BAA's conduct was wrongful or unlawful. RRC makes no such contentions to this Court regarding Count III's failure to allege sufficiently wrongful or unlawful conduct by BAA. As such, we shall not consider whether the Court of Special Appeals erred in affirming the Circuit Court's decision to deny RRC leave to amend Count III.

As it had in the Court of Special Appeals, RRC contends here, in the final paragraph of its Reply Brief, that, "[i]n its motion to alter or amend the judgment, RRC also demonstrated that if given leave to amend, it would be able to state a claim for breach of contract based on BAA's treatment of RRC in contravention of BAA's contractual duties toward disadvantaged business entities." In support of its position, RRC notes that BAA agreed expressly in the Master Lease with MAA that it would make "good faith efforts" not to discriminate against any disadvantaged business entities, such as RRC, and that this provision was incorporated expressly into BAA's subleases with RRC. RRC, however, fails to demonstrate that BAA owed any such contractual duty to RRC, rather than to MAA. In addition, as noted by the Court of Special Appeals, at no point in RRC's motion to alter or amend did RRC request leave to amend the Amended Complaint to add such a proposed count premised upon discrimination. Rather, RRC's discussion of BAA's obligations toward disadvantaged business entities related solely to Count I and its allegations of BAA's "bad faith." Finally, it appears that RRC's contentions in this regard, in essence, seek leave to amend the Amended Complaint to restate Count V of the Original Complaint, which was not included in the Amended Complaint, and, therefore, was abandoned apparently by RRC. As such, we conclude that the Court of Special Appeals did not err in finding that the Circuit Court did not abuse its discretion when it denied RRC leave to amend the Amended Complaint to include an additional or amended count premised upon alleged violations of BAA's duty to RRC to refrain from discriminating against disadvantaged business entities, such as RRC.
[18] Maryland Rule 2-341, entitled "Amendment of pleadings," provides in pertinent part:

(c) Scope. An amendment may seek to (1) change the nature of the action or defense, (2) set forth a better statement of facts concerning any matter already raised in a pleading, (3) set forth transactions or events that have occurred since the filing of the pleading sought to be amended, (4) correct misnomer of a party, (5) correct misjoinder or nonjoinder of a party so long as one of the original plaintiffs and one of the original defendants remain as parties to the action, (6) add a party or parties, (7) make any other appropriate change. Amendments shall be freely allowed when justice so permits. Errors or defects in a pleading not corrected by an amendment shall be disregarded unless they affect the substantial rights of the parties.
Md. Rule 2-341(c) (2008).
[19] In any event, as noted by the intermediate appellate court, the 2005 sublease attached to RRC's motion to alter or amend or for reconsideration contains a contract term that would appear to defeat the breach of contract counts by absolving BAA of liability for economic damages caused by RRC's competitors at BWI, thereby also making any further amendment to Counts I and II futile apparently. Specifically, Section 12.29.1 of the 2005 sublease states, in relevant part:

BAAM's Liability; Subtenant's Risk; Waiver of Claims
12.29.1 Except as (and to the extent that) the same may be caused directly by BAAM's gross negligence or willful misconduct, BAAM and its Representatives shall not be liable for, and Subtenant hereby releases and relieves BAAM and its Representatives from all liability for any Losses or Claims in connection with any and all loss of life, personal injury, damage to or loss of property, or loss of interruption of business loss of use occurring to Subtenant or any Subtenant Party or any other Person claiming by, through or under any of them, in or about or arising out of the Premises from. . . (j) any acts or omissions of the other subtenants or occupants of the airport; . . . (l) any acts or omissions of BAAM, its Representatives. . ., and shall apply without distinction as to the Person whose act or neglect was responsible for the damage and whether the damage was due to any of the causes specifically enumerated above or to some other cause of an entirely different kind.